J-A19034-25

2025 PA Super 253

| DANIEL WENTWORTH AND LYNN RAE WENTWORTH | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| Appellants | : | |
| v. | : | |
| JUERGEN M. STEINMETZ | : | No. 293 WDA 2025 |

Appeal from the Order Entered January 13, 2025
In the Court of Common Pleas of Beaver County Civil Division
at No(s): 2024-11601

BEFORE: BOWES, J., STABILE, J., and BENDER, P.J.E.

OPINION BY BOWES, J.:                     **FILED: NOVEMBER 12, 2025**

Daniel and Lynn Rae Wentworth appeal from the order that sustained preliminary objections in the nature of a demurrer filed by defendant Juergen M. Steinmetz and dismissed their complaint alleging a violation of the Real Estate Seller Disclosure Law ("RESDL"), fraudulent misrepresentation, and negligent misrepresentation. We affirm.

Given the procedural posture of this case, we accept as true the following facts alleged in the Wentworths' complaint.[1] The Wentworths purchased a residential property from Steinmetz in Beaver County, Pennsylvania. After moving in, the Wentworths discovered under rugs in the

---

[1] *See*, *e.g.*, *Morrissey v. St. Joseph's Preparatory Sch.*, 323 A.3d 792, 799 (Pa.Super. 2024) ("As an appellate court reviewing the approval of a demurrer, we must accept as true all well-pleaded material facts in the complaint as well as all inferences reasonably deducible therefrom." (cleaned up)).

basement a tile floor that incorporated both a swastika and what they perceived to be a Nazi eagle.[2] The Wentworths claimed that they would not have purchased the home had they been aware of the Nazi symbols tiled into the floor, that they could not be expected to live in or sell the home in that condition, and that it would cost $30,000 to replace the floor. Accordingly, they maintained that Steinmetz was liable for compensatory and punitive

_____

[2] Photographs attached as Exhibit D to the complaint show, respectively, the purported eagle and swastika:



Complaint, 10/29/24, at Exhibit D. Steinmetz has denied creating the floor pattern in support of Nazism, citing the history of the swastika predating its use by the Nazis. **See** Steinmetz's brief at 8. The Wentworths acknowledge that the swastika is an ancient symbol that had been used around the world, but suggest that since it is here "styled in the fashion of that used by the Nazis," and accompanied by the German eagle, no reasonable person would believe that this is Native American or Buddhist imagery. **See** Wentworths' brief at 12. In resolving this appeal, we view Steinmetz's subjective intent as irrelevant and accept the Wentworths' allegations that these are pro-Nazi emblems and would likely be viewed as such by guests to their home and prospective buyers. **See Morrissey**, 323 A.3d at 799.

damages due to his failure to disclose the defect. **See** Complaint, 10/29/24, at ¶¶ 5-15, 28.

Steinmetz filed preliminary objections observing that the Wentworths failed to identify any inaccurate or untruthful answer he provided in his disclosure form that would support any of their causes of action. **See** Preliminary Objections, 12/4/24, at ¶¶ 8-9. He further asserted that, pursuant to our Supreme Court's decision in **Milliken v. Jacono**, 103 A.3d 806 (Pa. 2014) ("**Milliken II**"), attributes of a property giving rise to psychological stigma are not material defects required to be disclosed under RESDL. **See** Preliminary Objections, 12/4/24, at ¶ 10.

After considering the parties' briefs and entertaining oral argument, the trial court agreed with Steinmetz that the **Milliken II** decision foreclosed the Wentworths' claims. Therefore, it sustained the preliminary objections and dismissed the complaint. The Wentworths filed a timely appeal from the trial court's order, and both they and the trial court complied with Pa.R.A.P. 1925.[3] The Wentworths state the following question for our resolution: "Did the trial court err when it granted [Steinmetz's] preliminary objections and dismissed the [Wentworths'] claims on the grounds that an undisclosed swastika and German Eagle tiled into the floor of the basement was not a material defect pursuant to [RESDL]?" Wentworths' brief at 3 (cleaned up).

---

[3] To satisfy its Rule 1925(a) duty, the trial court referred us to the memorandum opinion that accompanied the appealed-from order.

We begin with an examination of the applicable law, starting with our standard of review:

> In ruling on preliminary objections in the nature of a demurrer, the trial court was required to accept as true all well-pleaded allegations of material fact and all reasonable inferences deducible from those facts and resolve all doubt in favor of the non-moving party. The question presented was whether, on the facts averred, the law says with certainty that no recovery is possible. When any doubt exists as to whether the demurrer should be sustained, this doubt should be resolved in favor of overruling it.
>
> On appeal from the trial court's order overruling preliminary objections in the nature of demurrer, our standard of review is *de novo* and our scope of review is plenary. Hence, we apply the same standard as the trial court in evaluating the legal sufficiency of the complaint, and examine whether, on the facts averred, the law says with certainty that no recovery is possible.

*Palmiter v. Commonwealth Health Sys., Inc.*, 260 A.3d 967, 970–71 (Pa.Super. 2021) (cleaned up).

Turning to the substantive law, with exceptions not implicated here, RESDL applies to all residential real estate transfers and mandates certain disclosures thusly:

> Any seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of [§] 7304 (relating to disclosure form). A signed and dated copy of the property disclosure statement shall be delivered to the buyer in accordance with [§] 7305 (relating to delivery of disclosure form) prior to the signing of an agreement of transfer by the seller and buyer with respect to the property.

68 Pa.C.S. § 7303. Our legislature defined the term "material defect" as follows:

- 4 -

A problem with a residential real property or any portion of it that would have a significant adverse impact on the value of the property or that involves an unreasonable risk to people on the property. The fact that a structural element, system[,] or subsystem is near, at or beyond the end of the normal useful life of such a structural element, system[,] or subsystem is not by itself a material defect.

68 Pa.C.S. § 7102.

The mandatory disclosure form must address the following subjects:

(1)   Seller's expertise in contracting, engineering, architecture or other areas related to the construction and conditions of the property and its improvements.

(2)   When the property was last occupied by the seller.

(3)   Roof.

(4)   Basements and crawl spaces.

(5)   Termites/wood destroying insects, dry rot and pests.

(6)   Structural problems.

(7)   Additions, remodeling and structural changes to the property.

(8)   Water and sewage systems or service.

(9)   Plumbing system.

(10)  Heating and air conditioning.

(11)  Electrical system.

(12)  Other equipment and appliances included in the sale.

(13)  Soils, drainage, boundaries and sinkholes.

(14)  Presence of hazardous substances.

(15)  Condominiums and other homeowners associations.

(16) Legal issues affecting title or that would interfere with use and enjoyment of the property.

(17) Condition, if known, and location of all storm water facilities, including a statement disclosing whether ongoing maintenance of the storm water facilities is the responsibility of the property owner or the responsibility of another person or entity.

68 Pa.C.S. § 7304(b).

While a real estate transfer cannot be invalidated solely for a seller's failure to comply with RESDL, "any person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this chapter shall be liable in the amount of actual damages suffered by the buyer as a result of a violation of [RESDL]." 68 Pa.C.S. § 7311(a). This creation of a cause of action does not impact "the authority of a court to impose punitive damages or apply other remedies applicable under any other provision of law." *Id*. Hence, litigation to enforce RESDL's disclosure requirements often includes allegations of fraud or misrepresentation and violation of the catch-all provision of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), which, pursuant to 73 P.S. § 201-9.2(a), allows for the recovery of treble damages and attorney fees. **See**, **e.g.**, **Milliken II**, 103 A.3d at 808; **Phelps**, 190 A.3d at 1234.

Claims for violation of the mandatory disclosure of material defects typically concern latent flaws in the soundness of the structure or functioning of its integral systems. **See**, **e.g.**, **Phelps**, 190 A.3d at 1234 (alleging

deficiencies including a leaking roof, deteriorated septic system, and improper removal of load-bearing walls). Whether offensive imagery on an otherwise-sound feature of the property amounts to a material defect appears to be an issue of first impression, as neither the parties, the trial court, nor this Court uncovered authority addressing this scenario.

The trial court reached its decision in reliance upon our High Court's ruling in ***Milliken II***, which also involved an allegation of an atypical defect that the sellers did not disclose, namely the fact that a murder and suicide had taken place in the home. Specifically, a man shot and killed his wife and himself in their house in February 2006, an event that was highly publicized locally and online. The defendants purchased the property at auction in September 2006, invested in significant renovations, and listed it for sale in June 2007. They did not mention the murder/suicide in their RESDL disclosure form. A California resident purchased the home in August 2007 and, only after moving in, learned about the previous owners' deaths from neighbors.

Maintaining that she never would have purchased the property if she had prior knowledge of the murder and suicide, the buyer sued the defendants for fraud and negligent misrepresentation, as well as RESDL and UTPCPL violations, averring that the undisclosed stigma rendered the property worth $100,000 less than she paid for it. The trial court granted the defendants' motion for summary judgment, concluding that the incident was not a material defect that required disclosure such that all the buyer's claims failed. This

Court initially reversed, but upon *en banc* reargument, we affirmed. ***See***

***Milliken v. Jacono***, 60 A.3d 133, 139 (Pa.Super. 2012) (*en banc*) ("***Milliken***

***I***").

As to the RESDL cause of action, we observed that § 7304(b)'s enumerated disclosures all deal "with either the actual physical structure of the house, its components, and the condition of the curtilage (3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13), potential legal impairments attached to the property (15, 16), [or] hazardous substances on the property (14)." ***Id***. at 139. On the other hand, the commission of a murder/suicide in the home "goes to the reputation of the property and not its actual physical structure." ***Id***. We reasoned that "psychological damage is so different from the physical and legal defects listed that it is plain that the Legislature intended not to include it." ***Id***.

This Court further lamented the problems attendant to extending a seller's disclosure duty beyond the limited topics concerning "structural matters, legal impairments, and hazardous materials" mandated by our General Assembly:

> First, how recent must the murder be that the seller must inform the buyer? What if the murder happened 100 years ago? What if numerous owners have lived in the house in the interim? In fact, the buyer here is one buyer removed from the murder/suicide at issue. This raises another concern. This sort of psychological damage to a house will obviously decrease over time as the memory of the murder recedes from public knowledge. Requiring a seller to reveal this information may force the seller to sell the house under market value and allow the buyer to realize a windfall when the house is resold [ten] years later and memories have

faded. The passage of time has no similar curative effect on structural damage, legal impairments, or hazardous materials.

Second, how can a monetary value possibly be assigned to the psychological damage to a house caused by a murder? The psychological effect will vary greatly from person to person. There are persons for whom no amount of money would induce them to live in such a house, while others may not care at all, or even find it adventurous. Further, as noted, the monetary value of such a psychological defect will dissipate with the passage of time as the memory of the murder recedes.

Third, is this disclosure limited to murder, or must other crimes be revealed also? A buyer might want to know that a house has been burgled five times in the last year because that might indicate that the neighborhood is dangerous. What about crimes that did not occur on the property itself? Suppose there had been a number of shootings in the neighborhood. Further, a buyer might want to know that a child molester lived in the neighborhood.

The fact that a murder once occurred in a house falls into that category of homebuyer concerns best left to *caveat emptor*. If psychological defects must be disclosed then we are not far from requiring sellers to reveal that a next-door neighbor is loud and obnoxious, or on some days you can smell a nearby sewage plant, or that the house was built on an old Indian burial ground. Indeed, one could identify numerous psychological problems with any house. Sellers should only be required to reveal material defects with the actual physical structure of the house, with legal impairments on the property, and with hazardous materials located there. To allow consideration of possible psychological defects opens a myriad of disclosures that sellers will need to reveal, and starts a descent down a very slippery slope.

*Id*. at 139-40 (cleaned up). We concluded that "a massive expansion" of obligatory disclosures to require a seller "to warn not only of the physically quantifiable but also of utterly subjective defects" could only be effectuated by our General Assembly. *Id*. at 140.

Therefore, this Court affirmed the trial court's rejection of the buyer's RESDL claim. We further ruled that the defendants were not subject to liability under the buyer's other theories, holding that the absence of an undisclosed material defect defeated the claims of fraud, negligent misrepresentation, and UTPCPL violation. *Id*. at 140-42.

Our Supreme Court declined to review this Court's rejection of the buyer's RESDL claim, but granted the buyer's petition for discretionary review to consider whether the occurrence of the murder and suicide was an undisclosed material defect that supported the buyer's causes of action for common law fraud and negligent misrepresentation, or under the UTPCPL. *See Milliken II*, 103 A.3d at 809 n.4. It ultimately answered that question in the negative, holding that the deaths did "not constitute an actionable material defect," which was a necessary element of each of the claims. *See Milliken II*, 103 A.3d at 807.

The *Milliken II* Court's reasoning was akin to that employed by this Court, highlighting the subjective nature of the alleged defect and the varying impact it would have on the value of the property, depending on the potential buyer. Citing the endless variety "of traumatizing events that could occur on a property," the Court opined that "[e]fforts to define those that would warrant mandatory disclosure would be a Sisyphean task." *Id*. at 810. The Court mused:

> One cannot quantify the psychological impact of different genres of murder, or suicide—does a bloodless death by poisoning or

- 10 -

overdose create a less significant "defect" than a bloody one from a stabbing or shooting?  How would one treat other violent crimes such as rape, assault, home invasion, or child abuse?  What if the killings were elsewhere, but the sadistic serial killer lived there?  What if satanic rituals were performed in the house?

*Id*.  Indeed, "[t]he possible fact patterns are endless and lead down a slippery slope—a slope we are not willing to descend."  *Id*.  The Court continued:  "If there is to be a newly created duty to disclose psychological stigma, it should only be imposed with clear definition by the legislature after careful consideration of all aspects and ramifications of the issue."  *Id*.

Furthermore, it opined that even safely assuming that most people would find all those happenings off-putting, "this does not make the events defects in the structure itself."  *Id*.  Our High Court elucidated:

The occurrence of a tragic event inside a house does not affect the quality of the real estate, which is what seller disclosure duties are intended to address.  We are not prepared to set a standard under which the visceral impact an event has on the populace serves to gauge whether its occurrence constitutes a material defect in property.  Such a standard would be impossible to apply with consistency and would place an unmanageable burden on sellers, resulting in disclosures of tangential issues that threaten to bury the pertinent information that disclosures are intended to convey.

*Id*.

Overall, the Court recognized that "an objective standard cannot be justly implemented, and employing a subjective standard would be wholly unfair considering the unpredictable impact psychological stigmas have on prospective buyers."  *Id*. at 811.  Therefore, after noting as a final matter that the alleged defect was not latent and could have readily been discovered by

- 11 -

the buyer given the publicity that the murder/suicide received, the **Milliken II** Court concluded: "We hold that purely psychological stigmas are not material defects of property that sellers must disclose to buyers. As the [buyer's] claims are premised on the murder/suicide being a material fact to the sales transaction, those claims must . . . fail."[4] **Id**.

Applying this analysis to the case at hand, the trial court concluded that the symbols tiled into the floor of the Wentworths' basement were not material defects that Steinmetz was required to disclose. Specifically, the court reasoned that the floor design was not "a physical or structural problem that poses an unreasonable risk to the people on/at the property or a legal impediment to its use or enjoyment." Trial Court Opinion, 1/13/25, at 8.

---

[4] Now-Chief Justice Todd, joined by Justice Stevens, concurred with this ruling. Justice Todd acknowledged that the RESDL claim was not before the Court, but observed that the claims it was reviewing were inextricably intertwined with the answers the sellers provided on the RESDL disclosure form. **See Milliken II**, 103 A.3d at 812 n.4. Upon examining the elements of the buyer's causes of action and the statutory language of RESDL and the Home Inspection Law, 68 Pa.C.S. §§ 7501-7513, she opined:

> In my view, the legislature's consistent use and construction of the term "material defect" to refer to physical or structural problems with a property that pose an unreasonable risk to people on the property, or legal impediments to its use or enjoyment, supports a conclusion that the occurrence of a murder or suicide on a property is not a "material defect" a seller is obliged to disclose to a buyer under the RESDL. As [the buyer's] claims were dependent on such an interpretation, I agree with the majority's conclusion that [she] failed to establish the elements necessary to prevail on either her common law claims, or her UTPCPL claim.

**Id**. at 814 (Todd, J., concurring).

Although the imagery was disturbing, it was nonetheless a cosmetic flaw that could be covered with paint the same way a buyer could cure undesirable wall coverings. *Id*. The court noted that the instant case was distinguishable from *Milliken*[5] insofar as the claimed defect here was not a matter of public record the way the murder and suicide had been, but rather had been covered by rugs. *Id*. at 8 n.2. However, it deemed the latent-patent distinction to be irrelevant in the absence of an actionable material defect. *Id*.

The Wentworths take no issue with *Milliken II*. Their position is "that there are several factors present in the instant case which distinguish it from the case in *Milliken* and do not give rise to the implications which concerned the Court in *Milliken* [*II*]." Wentworths' brief at 8. Specifically, the Wentworths emphasize that the alleged defect here "is not purely psychological in nature, but is an actual physical feature of the house." *Id*. Although they concede that their claim also rests upon the significant stigma associated with the swastika, they assert that this particular symbol "is unique in that there is probably no other symbol in American culture which is so widely reviled." *Id*. at 9. Yet, the Wentworths also suggest that undisclosed "racist or sexually explicit graffiti" is also a defect that should be actionable to require the seller to pay to remove. *Id*. However, they insist that allowing relief in

---

[5] Since *Milliken I* and *Milliken II* were founded upon the same factual basis, we do not designate one decision or the other when referencing only the background circumstances of that matter.

- 13 -

this scenario is compatible with precedent in that "a holding that considers physical features on a property of a shocking and outrageous manner to be material defects is one which could be narrowly tailored and would not give rise to the public policy concerns the Court had in *Milliken* [*II*]." *Id*. at 9-10. They observe that courts are accustomed to identifying what crosses the line in adjudicating "actions such as defamation/slander and intentional infliction of emotion distress and in the application of punitive damages and sanctions in a wide variety of legal matters." *Id*. at 13 (capitalization omitted).

The Wentworths additionally argue that, unlike the stigma at issue in *Milliken* that attached solely to the home, here the subsequent homeowners themselves are tainted by it. They content that "[t]he presence of a swastika tiled into the floor of one's home could reasonably be construed as an endorsement of Nazism," which "can obviously carry great social and economic consequences for the homeowner." *Id*. at 10. Suggesting that "[e]ven someone who privately agrees with Nazi ideology would still have reason to not want to be publicly associated with it" due to the reputational harm it would engender among the majority of the public, the Wentworths avow that this "goes beyond mere taste or opinion and rises to the level of a feature that one would not be expected to tolerate, thus making it a material defect." *Id*. at 10-11.

Steinmetz maintains **Milliken II** defeats the Wentworths' claims because they identify no structural problem with the home that creates a risk of physical harm, or legal issue that interferes with their use or enjoyment of the property. He argues:

> The fact that [the] Wentworth[s] may find the symbol on the floor objectionable and not want to live there, or that it may negatively affect the value of the home, . . . do not cause it to rise to the level of a material defect. If the Wentworths'] argument were to prevail, then the discovery [of] any artwork hidden behind a wall that a new owner finds objectionable, such as Michelango's *David* or Botticelli's *The Birth of Venus*, would qualify as a material defect. This is precisely the road that the Pennsylvania Supreme Court refused to go down when it decided [**Milliken II**]. While [the] Wentworth[s] may not like the pattern on the basement floor, others may find it to be nothing more than a curiosity, or a symbol that shares a long history across many cultures.

Steinmetz's brief at 13-14.

We agree with the Wentworths that the instant action is factually distinguishable from **Milliken**. Here, the alleged devaluation of the property results from a physical attribute of the property, not the knowledge of events that happened in the home. Further, although a past murder/suicide cannot be undone, the stigma caused solely by a physical feature of a property can be cured. Additionally, while the sellers in **Milliken** took no action to prevent the buyer from learning what had happened in the home, a fact that was of public knowledge, Steinmetz covered the objectionable floor tiles with rugs such that the Wentworths were unaware of them until they cleared the area.

Nonetheless, we are compelled to concur with Steinmetz that these are distinctions without a difference. Based upon our precedent establishing what

constitutes a material defect, the Wentworths' claims must fail because they suffer from the same lack of an objectively-quantifiable flaw as the one alleged in **Milliken**. In each scenario, the existence, and degree, of the defect is in the eye of the beholder. Certainly, a significant portion of homebuyers would eschew a house with a crude mosaic of Nazi iconography in its basement. Yet there is, sadly but undeniably, a segment of the population who would deem it an asset to the property. Further, even among the majority of prospective buyers who would not welcome having hate symbols adorning their basement floor, the degree to which the images impacted the value of the property would inevitably vary from person to person.

It is for these reasons that our Supreme Court has insisted that condition of the property constituting a material defect must be one that not only substantially impacts the value of the real estate, but lends itself to recognition and quantification by objective standards. Otherwise, the law "would be impossible to apply with consistency and would place an unmanageable burden on sellers, resulting in disclosures of tangential issues that threaten to bury the pertinent information that disclosures are intended to convey."[6] **Milliken II**, 103 A.3d at 810.

---

[6] We observe that, like the floor in this case, some of the scenarios that the **Milliken I** Court conjured in rejecting the RESDL claim in that case had a physical component as well as psychological one. **See Milliken I**, 60 A.3d at 140 (referencing "that a next-door neighbor is loud and obnoxious, or on some days you can smell a nearby sewage plant, or that the house was built on an old Indian burial ground").

A basement that floods, a roof that leaks, beams that were damaged by termites, an asbestos-tile kitchen floor: these are the conditions our legislature requires sellers to disclose if they are known. For more than ten years, our General Assembly has been aware that this Court and our High Court have taken the position that expansion of the definition of a material defect beyond these types of problems outlined in § 7304(b) of RESDL must come from that body, not from the courts. Yet no enactment has altered that definition for purposes of failure-to-disclose claims for violation of RESDL, fraud, or misrepresentation.

We are not dismissive of the Wentworths' outrage, nor their concern that the existence of the images could taint them as Nazi supporters. With this lawsuit, however, they have made a public record to counter any supposition in that regard. Further, as the trial court observed, with pains not to minimize the enormity of the situation, the Wentworths can prevent people who come into the home from viewing the symbols by covering them or painting over them. *See* Trial Court Opinion, 1/13/25, at 8.

Accordingly, we hold that the symbols on the Wentworths' otherwise sound and functional tile floor do not constitute a material defect that Steinmetz had a duty to disclose. We also agree with the trial court that, since the alleged flaw was not a material defect, the fact that Steinmetz covered it was rugs is immaterial. *Accord Bukoskey v. Palombo*, 1 Pa. D. & C. 5th 456, 473. (Beaver C.C.P. 2007) (citied by the majority and concurrence in

*Milliken II*, 103 A.3d at 809 n.5, 813 n.5) (holding that the seller's covering of a blood stain on the bedroom carpet from the prior owner's suicide did not have to be disclosed under RESDL because it was not a material defect, and further observing: "The carpeting itself may have had a material defect, but the carpeting can be replaced, so there could not be a defect in the house.").

Hence, the Wentworths' complaint did not allege facts giving rise to a viable cause of action, and the trial court properly sustained Steinmetz's preliminary objection in the nature of a demurrer.  Thus, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/12/2025