**[J-4-2025] [MO: Brobson, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| ROBERT N. HALPERN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | : | No. 7 EAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered on July 28, |
| Appellant | : | 2023, at No. 226 EDA 2023, |
| | : | affirming the Order of the Court of |
| | : | Common Pleas of Philadelphia |
| v. | : | County, Civil Division, entered on |
| | : | January 12, 2023, at No. |
| | : | 220301922. |
| RICOH U.S.A., INC., | : | |
| | : | ARGUED: March 4, 2025 |
| Appellee | : | |

**DISSENTING OPINION**

**JUSTICE WECHT**                                    **DECIDED: March 31, 2026**

The Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits sellers of goods or services from engaging in "unfair or deceptive acts or practices."[1] The UTPCPL defines "unfair or deceptive acts or practices" by enumerating twenty different forbidden sales practices.[2] In addition to the twenty specifically enumerated practices, the statute also contains a catch-all provision, which broadly forbids sellers from engaging

---

[1] 73 P.S. § 201-3 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful.").

[2] The listed practices include, for example, misrepresenting that used goods are new, misstating a product's country of origin, and breaching the terms of a written warranty. *Id.* § 201-2(4)(iv) (defining "unfair or deceptive acts or practices" to include "using deceptive representations or designations of geographic origin"); *id.* § 201-2(4)(vi) ("representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand"); *id.* § 201-2(4)(xiv) ("failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made").

in "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."[3]

The UTPCPL's catch-all provision has undergone one major amendment in its history. From 1968 to 1996, the catch-all simply prohibited "any other fraudulent conduct which creates a likelihood of confusion or misunderstanding."[4] Appellate courts interpreting this language consistently held that claims made under the catch-all required proof of each of the elements of common law fraud.[5] Apparently unsatisfied with this interpretation, the General Assembly amended the UTPCPL in 1996, broadening the catch-all to prohibit not just "fraudulent conduct," but also merely "deceptive conduct."[6]

Even after the UTPCPL's 1996 amendment, the Superior Court continued to hold—contrary to the revised statutory language—that a claim under the UTPCPL's catch-all provision required proof of common law fraud.[7] Various federal courts and the Commonwealth Court criticized the Superior Court for its failure to revisit its catch-all jurisprudence after the legislature's 1996 revision.[8] Responding to these criticisms, the

---

3      *Id.* § 201-2(4)(xxi).

4      *Id.* § 201-2(4)(xvii) (1968).

5      *See*, *e.g.*, *Hammer v. Nikol*, 659 A.2d 617, 619-20 (Pa. Cmwlth. 1995) ("[T]o recover under the catchall provision, the elements of common law fraud must be proven.").

6      73 P.S. § 201-2(4)(xxi) (prohibiting "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding").

7      *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 648 (Pa. 2021) (citing a half-dozen cases in which the Superior Court "continued to interpret Section 201-2(4)(xxi) to require proof of common law fraud without regard to the effect of the 1996 amendment").

8      *Commonwealth v. Percudani*, 825 A.2d 743, 747 (Pa. Cmwlth. 2003) ("[M]aintaining the pre-1996 [fraud] pleading requiremen[t] would render the words 'or deceptive conduct' redundant and superfluous, which is contrary to the rules of statutory construction."); *Flores v. Shapiro & Kreisman*, 246 F. Supp. 2d 427, 432 (E.D. Pa. 2002) ("[B]y adding a prohibition on 'deceptive' conduct, the 1996 amendment to the [UTPCPL] (continued…)

Superior Court eventually reversed its earlier decisions, belatedly recognizing in 2012 that "the legislature's inclusion of 'deceptive' in 1996 signaled that either fraudulent *or deceptive* conduct would constitute a catchall violation."[9]

In the present case, Appellant Robert Halpern alleges that Ricoh U.S.A. engaged in "deceptive conduct" in violation of the UTPCPL's catch-all provision when it sold him a digital camera without disclosing that the product had a defective aperture-control mechanism, of which Ricoh supposedly was aware. The trial court dismissed Halpern's UTPCPL claim on preliminary objections, with the Superior Court affirming that dismissal on appeal based on the strength of the rule announced in *Romeo v. Pittsburgh Associates*.[10]

In *Romeo*, a stadium spectator who was struck by a foul ball sued the Pittsburgh Pirates baseball organization under a litany of legal theories, including various common law torts and a statutory claim under the UTPCPL. The trial court sustained the baseball team's preliminary objections and dismissed the spectator's complaint. On appeal, the Superior Court dedicated almost all of its opinion to analyzing the spectator's common law claims, ultimately concluding that baseball teams owe no legal duty to warn stadium spectators of the risks associated with foul balls.

At the very end of its decision, the *Romeo* court turned to the spectator's UTPCPL claim. Without even identifying the subsection of the UTPCPL under which the spectator's claims arose, the panel stated:

---

eliminated the need to plead all of the elements of common law fraud[.]"); *In re Patterson*, 263 B.R. 82, 92 (Bankr. E.D. Pa. 2001) (declining to follow the Superior Court's case law because it fails to account for "the legislature's [1996] expansion of the scope of the catchall provision beyond fraudulent conduct").

[9]  *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145, 154 (Pa. Super. 2012) (emphasis added).

[10]  787 A.2d 1027 (Pa. Super. 2001).

> In order to state a claim under the UTPCPL, a plaintiff must allege one of the "unfair or deceptive practices" set forth in [the statute]. In considering these causes of action[,] it is important to remember that "[t]he general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices." *Lennon v. Wyeth-Ayerst Laboratories, Inc.,* 2001 WL 755944, at *2 (Pa. Super. filed June 14, 2001) (citing *Burke v. Yingling,* 666 A.2d 288, 291 (Pa. Super. 1995)).

> As we have repeatedly stated, appellee had "no-duty" to warn appellants about the risk of foul balls, and therefore nothing appellee did or did not do can be characterized as a "deceptive business practice." This situation is not one against which the law was designed to protect.[11]

*Romeo* has come to stand for the proposition that a seller's omission cannot constitute "deceptive conduct" under the UTPCPL's catch-all provision unless the seller was under some affirmative legal duty to disclose the withheld information.[12] But the *Romeo* court was not actually interpreting the UTPCPL's catch-all provision. In her civil complaint against the baseball team, the plaintiff in *Romeo* never even alleged a violation of the catch-all.[13] The court instead was discussing "deceptive business practices" generally, practices that the panel said were the harms "against which the [UTPCPL] was designed to protect."[14]

---

[11] *Id.* at 1033.

[12] *See Halpern v. Ricoh U.S.A., Inc.*, 299 A.3d 1023, 1029 (Pa. Super. 2023) ("[A] UTPCPL nondisclosure theory of deceptive conduct is only actionable if a vendor had an affirmative duty to disclose the defect in the good or service."). In practice, this view holds that a seller's mere silence cannot constitute "deceptive conduct" under the UTPCPL's catch-all unless the law elsewhere imposes upon the seller an affirmative duty to speak under the circumstances. An example of such duty is found in Pennsylvania's Real Estate Seller Disclosure Law ("RESDL"), which requires those selling real property to disclose certain material defects to real estate buyers. *See* 68 Pa.C.S. §§ 7301-7315. Given this affirmative disclosure obligation, a seller's failure to disclose a known defect under RESDL could also constitute a violation of the UTPCPL's catch-all, per *Romeo*.

[13] *Romeo v. Pittsburgh Associates*, 2001 WL 34758713 (Pa. Com. Pl. 2001).

[14] *Romeo*, 787 A.2d at 1033.

Had the *Romeo* court actually been attempting to interpret the phrase "deceptive conduct" in the UTPCPL's catch-all provision, the analysis likely would have looked quite different. Phrases like "deceptive conduct" and "deceptive acts" have well-established meanings in the consumer protection realm, meanings that consumer protection statutes almost universally embrace. For example, Section 5(a) of the Federal Trade Commission Act ("FTCA")—upon which Section 3 of the UTPCPL was based—prohibits "unfair or deceptive acts or practices."[15] A court attempting to discern the scope of the UTPCPL's catch-all prohibition on "deceptive conduct" likely would consult decisions interpreting the FTCA for persuasive guidance informing the state law inquiry.[16] Alternatively, a court deciding what the General Assembly meant by "deceptive conduct" in the catch-all provision might consult dictionaries to determine the ordinary meaning of (and thus likely intent behind) the phrase. The *Romeo* court did neither of these things. It simply declared, with no analysis, that seller omissions are incapable of deceiving consumers absent an affirmative legal duty to speak.

Today's Majority affirms *Romeo*'s clumsy interpretation of the UTPCPL, concluding that a seller's omission cannot constitute deceptive conduct under the law's catch-all unless the seller had some affirmative legal duty to disclose the withheld fact. Because

---

[15]  15 U.S.C. § 45(a)(1) ("Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."); *compare* 73 P.S. § 201-3 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as defined by . . . this act and regulations promulgated under . . . this act are hereby declared unlawful."); *see Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 818 n.15 (Pa. 1974) ("[S]everal of the appellees concede that the genesis of the [UTPCPL] lies in the FTC and Lanham Acts.").

[16]  *Monumental Props.,* 329 A.2d at 818 ("[W]e may look to the decisions under [the FTCA] for guidance and interpretation [of the UTPCPL].") ; *see*, *e.g.*, *Tomasella v. Nestle USA, Inc.*, 364 F. Supp. 3d 26, 34 (D. Mass. 2019) (interpreting the Massachusetts consumer protection law consistently with the FTC's interpretation of similar language in the FTCA).

the *Romeo* court offered no legal analysis for its holding, the Majority tries its best to backfill some logic to support it now. But there is no plausible textual basis for the *Romeo* rule. "Deceptive conduct," as that phrase is used in the UTPCPL, refers to "conduct that has the capacity to deceive."[17] Both affirmative acts and negative omissions have the capacity to deceive, as the Majority admits.[18] This means that, when the General Assembly amended the catch-all in 1996 to prohibit deceptive conduct in addition to fraudulent conduct, it necessarily imposed upon sellers a duty to speak whenever failure to do so would be "deceptive."

The Majority takes an astonishingly narrow view of deceptive omissions, saying "logic dictates" that a seller's silence can deceive only in the rare instance when the seller is under some affirmative legal duty to disclose material information.[19] That blanket presupposition is incorrect. A seller's omission has the capacity to deceive regardless of whether some other statute or legal doctrine imposes an affirmative disclosure obligation on the seller. As the FTC explained in *International Harvester Co.*,[20] most omissions in the marketplace occur when "the seller has simply said nothing, in circumstances that do not give any particular meaning to [the] silence."[21] Such "pure omissions" are not deceptive within the meaning of the FTCA, even though they "may lead to erroneous

---

[17] *Gregg*, 245 A.3d at 648.

[18] Majority Opinion at 13 ("[C]onduct that has the capacity to deceive can encompass omissions.").

[19] Majority Opinion at 14 ("Logic dictates that the only way a buyer could interpret a vendor's silence in a misleading way is if: (1) the vendor had a duty to disclose information to the buyer; and (2) the vendor's silence was, in essence, a representation that he had no information that needed to be disclosed."); *id.* ("[A] vendor's silence, absent a [legal] duty to speak is meaningless and incapable of deception.").

[20] *In re Int'l Harvester Co.*, 104 F.T.C. 949 (1984).

[21] *Id.* at 1059.

consumer beliefs if [the] consumer had a false, pre-existing conception which the seller failed to correct."[22] But, while pure omissions are not considered deceptive under the FTCA, the FTC has identified certain circumstances in which seller omissions can be deceptive, even in the absence of a legal duty to disclose:

> Actionable deception theory is not limited to false or misleading statements. Under two general circumstances it can also reach omissions. First, it can be deceptive to tell only half the truth, and to omit the rest. This may occur where a seller fails to disclose qualifying information necessary to prevent one of his affirmative statements from creating a misleading impression.
>
> * * * *
>
> It can also be deceptive for a seller to simply remain silent, if he does so under circumstances that constitute an implied but false representation. Such implied representations may take any of several forms. They may arise from the physical appearance of the product, or from the circumstances of a specific transaction, or they may be based on ordinary consumer expectations as to the irreducible minimum performance standards of a particular class of good.[23]

Halpern argues that Ricoh's silence in this case was deceptive under the FTC's "irreducible minimum performance" theory. He claims that Ricoh's silence created the deceptive impression that the camera he was purchasing met the ordinary consumer's minimum expectations for a camera. To illustrate this minimum-expectations theory of

---

[22] *Id.* The FTC in *International Harvester* opined that classifying pure omissions as deceptive under the FTCA would risk expanding the concept of deceptiveness "virtually beyond limits." *Id.* This is so, the FTC reasoned, because "[i]ndividual consumers may have erroneous preconceptions about issues as diverse as the entire range of human error, and it would be both impractical and very costly to require [sellers to provide] corrective information on all such points." *Id.*

[23] *Id.* at 1057-58 (footnotes omitted). Expanding upon the irreducible-minimum theory of deception, the FTC has explained that "[o]ffering a product for sale implies that the product is 'reasonably fit for its intended uses,' and that it is 'free of gross safety hazards.' If the product does not meet ordinary consumer expectations of minimum performance, or if the product is not reasonably fit for its intended uses, the seller must disclose that" fact, because failure to do so would be deceptive. Statement of Acting Chairman Maureen K. Ohlhausen In the Matter of Lenovo, Inc., Trade Reg. Rep. 17728 (Sept. 5, 2017).

deceptive conduct, Halpern gives the example of a seller who fails to mention that a car being sold cannot accelerate faster than thirty-five miles per hour. Withholding this information would be deceptive, Halpern argues, because the ordinary consumer reasonably would expect that all cars being sold can travel at highway speeds. "On the other hand, if a vendor does not disclose an annoyingly loud seatbelt alarm, that would not be deceptive, as it would still meet ordinary expectations of minimum performance."[24]

I agree with Halpern and the FTC that the plain meaning of "deceptive conduct" necessarily encompasses a seller's failure to disclose that the product being sold is not what it purports to be and will not meet the ordinary consumer's bare minimum performance expectation for the class of product.[25] To illustrate this concept, consider a merchant who remains silent while selling an item that plainly appears to be a flashlight but which contains no electronics and does not illuminate. Such a seller, by exploiting the near-universal expectations of his customers in order to mislead them, unquestionably engages in conduct that "has the capacity or tendency to deceive."[26] The fact that the seller never uttered the words "this is a flashlight" is of no consequence. Deception is deception. Selling a hollow metal tube designed to look like a flashlight is conduct that

---

[24] Brief for Halpern at 11; *accord* Statement of Acting Chairman Ohlhausen, *supra* note 23, at 17728 (explaining that "[m]ere annoyances that leave the product reasonably fit for its intended use" cannot form the basis of a deceptive omission claim).

[25] While not at issue in this case, I also agree with the FTC that a partial omission, which occurs when the seller tells only half of the truth and omits the rest, could also constitute "deceptive conduct" under the catch-all.

[26] *Shapiro v. Golden Gate Nat'l Senior Care LLC*, 194 A.3d 1010, 1023 (Pa. 2018) (explaining that "[a]n act or a practice is deceptive or unfair if it has the capacity or tendency to deceive"); *see* FTC Statement of Basis and Purpose of Trade Regulation Rule, 29 Fed.Reg. 8325, 8352 (July 1964) ("Section 5 forbids sellers to exploit the normal expectations of consumers in order to deceive just as it forbids sellers to create false expectations by affirmative acts.").

has the capacity to deceive regardless of whether or not there exists a Flashlight Seller Disclosure Law of the sort that the Majority would require.

The logic underlying the FTC's deceptive omissions framework is sound.  A statutory prohibition on deceptive conduct does not merely prevent sellers from deceiving affirmatively; it also forbids them from deceiving by omission "under circumstances that constitute an implied but false representation."[27]  Such implied representations can take different forms.  To give the obvious example, it is well-established that sellers offering goods for sale impliedly represent to consumers that those goods are reasonably fit for their obvious intended uses.[28]  A seller who fails to disclose that his product cannot perform as would be expected based upon the product's appearance  engages in silent "deceptive conduct" under any reasonable understanding of deception.[29]  Notwithstanding this straightforward understanding of deception, the Majority cannot bring itself to admit that a seller lacking a duty to speak could ever engage in conduct that has the capacity to deceive.[30]  The Majority's rule is at odds not only with the UTPCPL's text, but also with life and logic themselves.

---

[27]     *In re Int'l Harvester Co*., 104 F.T.C. at 1058.

[28]     *Id.* ("One generalization that emerges from these cases is that by the very act of offering goods for sale the seller impliedly represents that they are reasonably fit for their intended uses.").

[29]     *Conduct*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "conduct" to mean "[p]ersonal behavior, whether by action or inaction, verbal or nonverbal"); *Golden Gate Nat'l Senior Care,* 194 A.3d at 1023 (explaining that conduct is deceptive under the UTPCPL if it has "the capacity or tendency to deceive"); *id*. ("[I]t need only be shown that the acts and practices are capable of being interpreted in a misleading way."); *accord Commonwealth v. Chesapeake Energy Corp*., 247 A.3d 934, 936 (Pa. 2021) ("As a remedial statute, the UTPCPL is to be liberally construed to effectuate its objective of protecting the consumers of this Commonwealth from fraud and unfair or deceptive business practices.").

[30]     Majority Opinion at 14 ("[A] vendor's silence, absent a duty to speak, is meaningless and incapable of deception.").

*Romeo*'s incompatibility with the statutory text of the catch-all is perhaps not all that surprising. As noted, the catch-all was not even at issue in *Romeo*, and the court there did not purport to interpret the phrase "deceptive conduct" within the meaning of that provision. Moreover, *Romeo* was decided in an era when the Superior Court was actively disregarding the plain language of the UTPCPL by continuing to require proof of fraud under the catch-all even after the General Assembly's 1996 broadening of the provision. *Romeo* can only be understood as an artifact of that benighted period.[31] While I concede that the *Romeo* court's precise rationale is unknowable given its sparse analysis, I tend to agree with Halpern that *Romeo* "likely has a fraud lineage."[32]

Although the Majority claims that today's decision is based upon the plain language of the UTPCPL, the Majority does not explain the basis for its apparent belief that no "deceptive conduct" occurs when a seller fails to disclose that the product he is selling is not what it purports to be on its face. The Majority engages only perfunctorily with the FTC's irreducible minimum performance theory. The Majority simply claims that Halpern's camera met or exceeded the ordinary consumer's minimum expectations for a camera.[33] That's not the question. Whether Halpern's specific claim would succeed or

---

[31] When seller disclosure of known defects is legally required, and the seller does not disclose any such defects, the non-disclosure essentially conveys to the buyer that there are no defects. The failure to disclose a known defect when disclosure is legally required is therefore tantamount to fraud. *Romeo*, in other words, fits neatly within the flawed Superior Court jurisprudence of the time.

[32] Brief for Halpern at 9 (speculating that *Romeo* "likely has a fraud lineage, as it falls within the time period between 1996 and 2012 when the Superior Court was disregarding the [1996] catchall amendment").

[33] Majority Opinion at 20 ("[I]t cannot be said that [Halpern's] camera failed an 'irreducible minimum performance standard' when it performed perfectly beyond the period for asserting any implied (or express) warranty claims." (quoting Ricoh's Brief at 43)). The Majority opines similarly regarding the FTC's "half-truths" theory of deceptive omissions, stating that "it is undisputed that Ricoh did not make any half statement that would render any omission misleading." *Id.* (quoting Ricoh's Brief at 43).

fail on the merits under the FTC's irreducible minimum theory is not relevant. The only question for us is whether, as a matter of statutory interpretation, the UTPCPL's catch-all ban on "deceptive conduct" encompasses deceptive omissions made by a seller who is under no affirmative legal obligation (outside of the UTPCPL) to disclose the truth. If it is even theoretically possible for sellers to deceive customers by omission in the absence of a legal duty, then *Romeo* must be overturned.

In affirming *Romeo*, the Majority necessarily rejects the irreducible minimum performance theory of deceptive omissions. The Majority then attempts to defend that holding by suggesting that Halpern's specific claim would fail under the irreducible minimum approach. This analysis does not hold water. Because our interpretation of the catch-all will bind all future litigants, we cannot use the perceived merits deficiencies in any one case to justify a flawed reading of the statute. Two things can be true at the same time. It is entirely possible that "deceptive conduct" under the catch-all encompasses deceptive omissions under an irreducible minimum theory *and* that Halpern, in this case, does not have a meritorious claim. We should not foreclose the possibility of a specific theory of deception simply because we believe a particular litigant before us has invoked the theory erroneously.

The Majority offers three primary excuses for departing from the plain language of the UTPCPL, none of which are convincing. First, the Majority claims that this Court "essentially" affirmed *Romeo*'s holding in *Milliken v. Jacono*,[34] which we did not do. The *Milliken* Court did not consider whether an omission can constitute "deceptive conduct" under the UTPCPL absent an affirmative disclosure duty. The *Milliken* Court treated a duty to speak under the RESDL as a prerequisite because that happened to be the

---

[34]    103 A.3d 806 (Pa. 2014).

plaintiff's legal theory in that RESDL case.[35]   Nothing in *Milliken* holds that deceptive omissions cannot constitute "deceptive conduct" absent an affirmative legal duty.[36]

Next, the Majority claims that its interpretation of the catch-all "fits the overall scheme of" the UTPCPL and "comports with the context in which it appears."[37]   (It, of course, does not comport with the plain language of the provision, which—I think we can agree—is more important.)   Specifically, the Majority notes that none of the twenty specific practices that precede the catch-all in the UTPCPL "involve silence unaccompanied by some affirmative statement or unaccompanied by direct interaction with consumers."[38]   The Majority's theory, I suppose, is that the catch-all should be interpreted no more broadly—or at least not too much more broadly—than the list of prohibited practices that comes before it.   But the entire point of the UTPCPL's catch-all is to proscribe a range of conduct beyond what is explicitly listed.   Otherwise, there would be nothing for the catch-all to catch.   Furthermore, the "deceptive conduct" language was purposefully added to the UTPCPL in 1996 to *expand* the catch-all's reach beyond that of the pre-existing statute.   It is illogical to suggest that we now must interpret "deceptive conduct" narrowly because of "the overall scheme" of the balance of the statute, which the General Assembly in the 1990s necessarily deemed insufficient on its own.

Lastly, the Majority claims that enforcing the UTPCPL's prohibition on deceptive conduct as written could provide an "end around" warranty law or might even somehow

---

[35]   *Id.* at 809 ("Each of appellant's claims relies upon the existence of a material defect in the property and upon the failure to reveal such defect. Thus, if the murder/ suicide cannot be considered a material defect, or if there was no legal obligation to reveal this alleged defect, there can be no liability for appellant's claims.").

[36]   *In re L.J.*, 79 A.3d 1073, 1081 (Pa. 2013) (noting that *stare decisis* "only applies to issues actually raised, argued[,] and adjudicated").

[37]   Majority Opinion at 15, 17.

[38]   *Id.* at 17 (quoting Ricoh's Brief at 32).

"turn warranty law on its head."[39] Not so. This case has nothing to do with warranties. The UTPCPL is a wide-ranging consumer protection scheme that serves an important purpose beyond mere vindication of consumers' warranty claims. The UTPCPL was enacted "to benefit the public at large by eradicating" from the consumer marketplace all "fraudulent and deceptive business practices."[40] Indeed, the UTPCPL does not just give purchasers of goods and services a private cause of action against sellers who engage in unfair or deceptive practices, it also allows the Commonwealth (either the Attorney General or a local district attorney) to bring an enforcement action to enjoin a seller from engaging in any deceptive practice.[41] We must give full effect to this comprehensive consumer-protection scheme. It would be an error to insist upon a narrow construction of the UTPCPL's catch-all simply because customers who are deceived by sellers might have other common law remedies available to them.[42]

In response to my analysis, the Majority does not defend any of the three rationales that it has offered for today's decision. The Majority instead casts the FTC's approach to deceptive omissions as some sort of "expansive principle" that will make all sellers of

---

[39]     *Id.* ("Halpern's position turns warranty law on its head."); *id.* at 18 ("Because the UTPCPL in no way provides an 'end around' of warranty law, we refuse to adopt Halpern's position.").

[40]     *Monumental Props*, 329 A.2d at 815 (explaining that the UTPCPL was intended "to benefit the public at large by eradicating, among other things, 'unfair or deceptive' business practices" (footnote omitted)); *id.* at 815-16 ("Just as earlier legislation was designed to equalize the position of employer and employee and the position of insurer and insured, this Law attempts to place on more equal terms seller and consumer. These remedial statutes are all predicated on a legislative recognition of the unequal bargaining power of opposing forces in the marketplace." (footnotes omitted)).

[41]     73 P.S. § 201-4.

[42]     Furthermore, the FTCA already prohibits deceptive omissions under an irreducible minimum performance theory. So, if adopting Halpern's argument would "turn warranty law on its head," then warranty law already is upside down in the federal courts.

"defective" products liable under the UTPCPL.[43] The Majority misunderstands the FTC's framework. We are not talking about merely "defective" products here. We are talking about flashlights that do not light and automobiles that contain lawnmower engines. Under the FTC's approach, seller omissions almost never are deceptive.[44] An omission becomes deceptive only when a seller remains silent "under circumstances that constitute an implied but false representation."[45] Such implied representations occur only rarely, like when a product is not what it physically appears to be or when a product falls below the bare minimum performance that any reasonable consumer would expect from the type of good. This is not an "expansive" principle.[46]

Because the *International Harvester* framework is nowhere near as broad as the Majority makes it out to be, my only guess is that the Majority is surmising from my dissent an unstated belief that Halpern's defective-camera claim would succeed under the UTPCPL. This is a mistake. I express no opinion regarding whether Halpern sufficiently

---

[43] Majority Opinion at 21 ("We are of the view that the General Assembly did not intend 'deceptive conduct' to encompass the expansive principle that, if a vendor merely sells a defective product, the vendor was 'deceptive' as a matter of law under the UTPCPL's catch-all provision.").

[44] *Int'l Harvester Co*., 104 F.T.C. at 1059 (distinguishing "pure omissions" from deceptive omissions).

[45] *Id.*

[46] *See Tomasella*, 364 F.Supp.3d at 35 (finding that a plaintiff failed to plead a deceptive omission claim under the FTCA where the complaint alleged that Nestlé did not disclose the use of child slave labor in its chocolate supply chain); *id.* ("Nestlé's act of offering chocolate for sale implies that the product is fit for human consumption, *see International Harvester*, 104 F.T.C. at 1058-59, but does not on its own give rise to any misleading impression about how Nestlé or its suppliers treat their workers."). The Majority's theory that adopting *International Harvester* would allow "all product defect cases [to] be pursued under the UTPCPL" (Majority Opinion at 21) can be disproven just by looking at the holding in *International Harvester*, where the FTC declined to find that a company which sold defective tractors engaged in deception. *International Harvester*, 104 F.T.C. at 1063.

pleaded a claim under the catch-all. My focus instead is on the underlying statutory interpretation question. My position, which I think I have made quite clear, is that: (1) the UTPCPL's text does not support *Romeo*'s imagined restriction on the kinds of omissions that can be deceptive; (2) the FTC's framework disproves *Romeo*'s core assumption that seller omissions cannot be deceptive absent a duty to disclose; and (3) the Majority is using the perceived weaknesses of Halpern's specific claim to give a narrow, anti-consumer interpretation to the entire consumer protection law.

The Majority's response to my analysis speaks mostly to an imagined, bogeyman rule that makes all sellers of defective products liable under the UTPCPL. The Majority does eventually address the genuine irreducible-minimum performance theory, albeit in the penultimate paragraph of today's decision. There, the Majority offers only a single sentence before veering to its preferred subject: Halpern's digital camera.[47] In the sole

_____

[47]   At several pivotal points in today's decision, just when it seems that the Majority will be forced to confront the fact that omissions can be deceptive without a seller disclosure duty in place, the Majority shifts focus and diverts the reader's attention to the specifics of Halpern's claim. *See* Majority Opinion at 17 ("[I]t is undisputed that [Halpern's camera] was covered by a one-year express warranty and that the camera functioned appropriately while under that warranty."); *id.* at 20 ("Ricoh did not make any half statement that would render any omission misleading."); *id.* ("[I]t cannot be said that [Halpern's] camera failed an 'irreducible minimum performance standard' when it performed perfectly beyond the period for asserting any implied (or express) warranty claims."); *id.* 24 ("That is not what Halpern alleges in this case."). The Majority baldly declares that "a vendor's silence, absent a duty to speak, is meaningless and incapable of deception." *Id.* at 14. I have attempted to examine that claim, and have detailed circumstances in which the logic does not hold true. The Majority shrugs off my discussion of hypotheticals beyond the present appeal as some sort of tangential "interest" of mine. *Id.* at 22 (stating "[l]astly, we address the dissent's interest in flashlights," as if I have wandered afield). I am aware, of course, that Halpern did not purchase a digital camera "that turned out to be a pencil sharpener." *Id.* I grant that this is funny, but my point has nothing to do with Halpern. My point is that an omission *could be* deceptive even in the absence of a seller disclosure duty, which proves that *Romeo* is wrong.

on-topic sentence, the Majority asserts that its holding will "not foreclose a potential [UTPCPL] claim against" a seller who silently misleads "a consumer into believing that a product is something that it is not."[48] Of course it will. The Majority's rule—mandated by fixed "logic," we are told—is that a seller's omission literally cannot deceive a customer unless the seller has an affirmative legal duty to speak.[49] This means that sellers of goods and services will be free to mislead by silently exploiting customers' ordinary expectations in most circumstances (so long as there is no legal duty to disclose). The Majority cannot have it both ways. It can either embrace *Romeo*'s rule that deception by omission is impossible absent a seller duty to speak, or it can admit that selling a product that is not what it appears to be is deceptive even absent an affirmative disclosure duty. It is not at all clear which the Majority believes. *Compare* Majority Opinion at 14 ("[A] vendor's silence, absent a duty to speak, is meaningless and incapable of deception."), *with id.* at 22 ("If a seller misleads, by commission or omission, a consumer into believing that a product is something that it is not, our analysis does not foreclose a potential claim against

---

[48] *Id.* at 22 ("If a seller misleads, by commission or omission, a consumer into believing that a product is something that it is not, our analysis does not foreclose a potential claim against the seller for that alleged deception.").

[49] *Id.* at 14 ("Logic dictates that the **only** way a buyer could interpret a vendor's silence in a misleading way is if: (1) the vendor had a duty to disclose information to the buyer; and (2) the vendor's silence was, in essence, a representation that he had no information that needed to be disclosed." (emphasis added)); *id.* ("[A] vendor's silence, absent a duty to speak, is meaningless and incapable of deception."); *id.* at 21 ("[R]equiring a buyer that is pursuing an omission-based claim under the catch-all provision to allege and eventually prove that a vendor had an obligation to disclose something about the product at issue is consistent with the language of the catch-all provision and avoids unreasonably expanding the statute beyond its boundaries."); *id.* at 22-23 ("Although the Superior Court's UTPCPL analysis in *Romeo* was undoubtedly sparse, we nevertheless hold that *Romeo* reached the correct result.").

the seller for that alleged deception."). It is clear only that the Majority knows that Halpern should lose.[50]

The UTPCPL's prohibition on "deceptive conduct" is phrased broadly enough to encompass deceptive omissions. While nearly all seller omissions in the marketplace are "pure omissions," which do not give rise to deception, I agree with the FTC that there are a small number of instances—such as in the irreducible minimum performance context—where a seller's omission can (and in fact is intended to) deceive the ordinary, reasonable consumer. We therefore must reject *Romeo*'s holding, or alleged holding, that deceptive omission claims under the catch-all require that the seller must have some affirmative legal duty of disclosure.[51]

I respectfully dissent.

Justices Donohue and Mundy join this dissenting opinion.

---

[50] The Majority's only other response to my analysis is to suggest that my position risks "expanding the statute beyond its boundaries." Majority Opinion at 21. I am unaware of the "boundaries" that the Majority is talking about. The UTPCPL's "boundaries" are those expressed in the statutory text, 1 Pa.C.S. § 1921(b). The UTPCPL's text does not limit the types of omissions that can be considered deceptive. The statute broadly prohibits *any* act or omission that has the capacity or tendency to deceive, without regard to whether an omission runs afoul of some affirmative legal obligation to disclose material information. The "boundaries" that the Majority is imposing are not in the UTPCPL. They are erected today by this Court, and are accordingly an impermissible judicial amendment of the statute.

[51] Credit is owed to the panel below, which correctly recognized that *Romeo* is a flawed and unsupported decision. *Halpern*, 299 A.3d at 1029 ("At best, this Court's [UTPCPL] analysis in [*Romeo*] is sparse. The panel did not review the statute's language, its legislative history, or similarly worded statutes from our Sister States or the Federal Government. Moreover, the *Romeo* court offered no explanation as to how a common-law duty to disclose (or lack thereof) could override the statutory mandates of the [UTPCPL]." (citations omitted)). The court below nevertheless acknowledged that it was bound by Superior Court precedent and applied *Romeo* out of obligation. Today's Majority can make no similar excuse.