2023 PA Super 139

| | | |
|---|---|---|
| ROBERT N. HALPERN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : | |
| v. | : : | |
| RICOH U.S.A., INC. | : | No. 226 EDA 2023 |

Appeal from the Order Entered January 12, 2023,
in the Court of Common Pleas of Philadelphia County,
Civil Division at No(s):  220301922.

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.[*]

OPINION BY KUNSELMAN, J.:                    **FILED JULY 28, 2023**

In this putative class action, Plaintiff, Buyer and Class Representative Robert N. Halpern, Esq. ("Buyer"), appeals from the order sustaining Ricoh U.S.A., Inc.'s preliminary objections and dismissing the case with prejudice.[1] Buyer claims that Ricoh's failure to disclose a defect in a digital camera, which it sold to him and to a nationwide class, violates the Pennsylvania Uniform Trade Practices and Consumer Protection Law (CPL).[2]  The trial court ruled that Buyer's amended complaint did not state a cause of action under the statute.  Given this Court's precedents, dismissal was proper.  Hence, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] We have amended the caption to reflect the fact that Buyer, a member of the Pennsylvania and New York bars, filed this case as a would-be class action.

[2] **_See_** 73 P.S. §§ 201-1 – 201-9.3.

"When an appellate court rules on whether preliminary objections in the nature of a demurrer were properly sustained, the standard of review is *de novo*, and the scope of review is plenary." ***Mazur v. Trinity Area Sch. Dist.***, 961 A.2d 96, 101 (Pa. 2008). We may affirm an order sustaining "preliminary objections only when, based on the facts pleaded, it is clear and free from doubt that the complainant will be unable to prove facts legally sufficient to establish a right to relief." ***Id.*** In other words, we must resolve any doubt in favor of reversal.

"For the purpose of evaluating the legal sufficiency of the challenged pleading, the court must accept as true all well-pleaded, material, and relevant facts alleged in the complaint and every inference that is fairly deducible from those facts." ***Id.*** When, as here, a plaintiff has filed an amended complaint, we "take these facts from [the] amended complaint." ***Grose v. Procter & Gamble Paper Prods.***, 866 A.2d 437, 439 n.1 (Pa. Super. 2005).

According to the amended complaint, Ricoh sells various electronics, including cameras branded as Pentax. ***See*** Amended Complaint at 1, ¶ 3. In April of 2015, Buyer purchased a Pentax Model K-50, which is a digital, single-lens-reflex camera. ***See id.*** at 2, ¶¶ 6, 7.

After five years of use, the camera malfunctioned because of "a failure of . . . the aperture-control mechanism," *i.e.*, the shutter lens. ***Id.*** at 4, ¶ 29. As a result, the camera began taking pictures that were too dark or black in normal lighting.

Without getting overly technical, Ricoh changed a component in the Model K-50 (and its predecessor, the Model K-30) from Teflon to polyester, *i.e.*, from a white to a green solenoid. ***See id.*** at 5, ¶¶ 35-37. "These green solenoids tend to fail with greater frequency when a camera is not used for an extended period of time." ***Id.***, ¶ 40. This produced pictures that are "black or dark images [at] normal exposure settings." ***Id.*** at 4, ¶ 26. By using green solenoid instead of white solenoid, Ricoh reduced the life expectancy of Buyer's camera from 100,000 pictures to under 9,000. ***See id.***, ¶ 27, n.5. Had Buyer known of this latent defect, "he would not have purchased that particular model . . . ." ***Id.*** at 12, ¶ 93.

Internet research revealed the Model K-50's defect was common among consumers. For example, an online forum of Pentax users conducted a survey and found "almost one-third [of respondents] reported the failure of their aperture-control mechanisms. Most of the reported failures were with the Models K-30 and K-50." ***Id.*** at 6, ¶¶ 43, 44. Furthermore, "in its removal of this action to federal court, . . . Ricoh extrapolated that a total of 11,411 Model K-50s and K-30s have suffered failures of their aperture-control mechanisms." ***Id.*** at 7, ¶ 51.

Ricoh has issued no "public advisories, warnings, recommendations, or other statements regarding the widespread, aperture-control-mechanism failures." ***Id.***, ¶ 49. Nor did it give Buyer "***any*** information regarding the failure of his aperture-control mechanism," until after the defect manifested itself. ***Id.***, ¶ 50 (emphasis in original). That information was limited to the

statement that "all products can and will most likely occur [*sic*] problems over time which will require repair." ***Id.*** at 8, ¶ 58 (bracket in original). Ricoh suggested Buyer "send his camera to its authorized service center, Precision Camera, for a 'chargeable repair.'" ***Id.***, ¶ 56. The repair shop quoted Buyer a price of $260. ***See Id.***

Buyer later learned he could bypass the defect "by using an older lens with a manually controlled aperture ring." ***Id.***, ¶ 62. He ordered it for $166.

On March 20, 2020, Buyer filed a complaint against Ricoh in the Court of Common Pleas of Philadelphia County. He did so in his own right and "on behalf of the nationwide buyers of Pentax cameras that suddenly and continually produced black or dark images with normal exposure settings[, provided the] cameras failed . . . within the six-year statute of limitations" for the CPL. ***Id.*** at 9, ¶ 66. The original complaint contained two counts, but Buyer proceeded only on his CPL claim.

In that count, Buyer contended the General Assembly passed the CPL "to promote full disclosure of information to consumers." ***Id.*** at 10, ¶ 76. Based on the statute's catch-all provision,[3] he asserted that, even though "Ricoh knew or should have known of the defect at the time [Buyer] purchased his camera," it "is strictly liable for its failure to disclose the defect in [Buyer's] camera and in the cameras of those similarly situated." ***Id.***, ¶ 91, 92. In Buyer's mind, "Ricoh's failure to disclose this defect was a deceptive omission,

---

[3] ***See*** 73 P.S. § 201-2(4)(xxi).

as it tended to cause confusion and misunderstanding." *Id.*, ¶ 89. He believes his damages are the cost of repairing or replacing the aperture-control mechanism. *See id.* at 13, ¶ 95.[4]

Ricoh filed preliminary objections in the nature of demurrer. Buyer filed an amended complaint, and Ricoh renewed its preliminary objections. After receiving briefs, the trial court sustained the preliminary objections.

According to the court, Buyer's amended complaint "claims no applicable deceptive conduct or justifiable reliance." Trial Court Opinion, 3/7/23, at 4. It opined that Buyer cannot prove deceptive conduct, because he alleged no "pre-purchase interaction, communication, advertisement, or promises from Ricoh, let alone any false or deceptive statements." *Id.* Next, the trial court explained that, in the absence of a pre-purchase interaction with Ricoh, Buyer could not allege "any statement or representation from Ricoh" upon which to have justifiably relied. *Id.* This timely appeal followed.

Buyer raises two issues. They are:

1.      Whether the trial court erred when it held that [Buyer] failed to allege deceptive conduct under the catch-all provision of the [CPL], as he did not allege any pre-purchase "false or deceptive statements," though he did allege [Ricoh's] failure to disclose a defect that existed at the time of sale.

---

[4] Upon receiving the complaint, Ricoh removed the matter to the United States District Court for the Eastern District of Pennsylvania, under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The district court granted Buyer's motion to remand, because Ricoh did not prove a class or an amount in controversy sufficiently large enough to invoke federal, class-action, diversity jurisdiction. *See* District Court Order, 7/20/22, at 2, n.1.

> 2. Whether the trial court erred when it held that [Buyer] failed to allege justifiable reliance under the catch-all provision of the CPL

Buyer's Brief at 6. We address only the first issue, because our disposition of it renders Buyer's second claim of error moot.

In order to maintain a cause of action under the CPL, a plaintiff must establish that:

> (1) they purchased or leased goods or services primarily for a personal, family, or household purpose;
>
> (2) they suffered an ascertainable loss of money or property;
>
> (3) the loss occurred as a result of the use or employment by a vendor of a method, act, or practice declared unlawful by the CPL; and
>
> (4) the consumer justifiably relied upon the unfair or deceptive business practice when making the purchasing decision.

***Gregg v. Ameriprise Fin., Inc.***, 245 A.3d 637, 646 (Pa. 2021) (quotation marks omitted). The trial court ruled that Buyer's amended complaint failed to plead sufficient facts to establish the third and fourth prongs.

Regarding the third prong – that Ricoh employed a method, act, or practice declared unlawful by the CPL – Buyer argues that the trial court interpreted the statute too narrowly. He contends the court required him to allege specific "false and deceptive statements in [his] pre-purchase interactions, communications, advertisements, or promises from Ricoh." Buyer's Brief at 10. Buyer insists this was erroneous, because "the CPL refers

to 'fraudulent or deceptive conduct,' a phrase that encompasses words and actions." *Id.* According to Buyer, Ricoh's deceptive conduct was its "failure to disclose the defect in the green solenoids, which led to premature failure of the aperture-control mechanism." *Id.* at 11. In other words, he suggests that Ricoh's deceptive conduct was a misrepresentation of omission (its failure to disclose the defect in the camera), rather than a misrepresentation of active statement.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "When the words of a statute are clear and free from all ambiguity, they are presumed to be the best indication of legislative intent." *Gregg*, 245 A.3d at 647. "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part, shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S.A. § 1903(a). Finally, we are mindful that, because "the CPL is a remedial statute, we must construe it liberally." *Gregg*, 245 A.3d at 647.

By enacting the CPL, our legislature declared "unfair or deceptive acts or practices in the conduct of any trade or commerce" to be "unlawful." 73 P.S. § 201-3. In addition to 20 specific practices, the CPL defines "unfair or deceptive acts or practices" in a catch-all provision. That provision outlaws

"engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

Based on that plain language, the CPL prohibits more than just "false or deceptive statements." Trial Court Opinion, 3/7/23, at 4. The CPL declares deceptive **conduct** by a vendor unlawful if it is likely to create confusion or misunderstanding. The word "conduct" is not defined in the statute. Because "conduct" is not a "technical word," it "shall be construed according to . . . [its] common and approved usage." 1 Pa.C.S.A. § 1903(a).

This Court recently defined "conduct" in the CPL as "the act, manner, or process of carrying on." *Garcia v. Am. Eagle Outfitters, Inc.*, 293 A.3d 252, 256 (Pa. Super. 2023), *reargument denied* (May 22, 2023) (quoting MERRIAM-WEBSTER ONLINE, https://merriam-webster.com/dictionary/conduct (last visited December 27, 2022)). Thus, by using the word "conduct," our legislature intended for the statutory prohibition to outlaw any deceptive act, manner, or process of trade "which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi).

Clearly, a deceptive act, manner, or process by a vendor would include the vendor's deceptive actions or omissions, in addition to "false or deceptive statements." Trial Court Opinion, 3/7/23, at 4. Therefore, we agree with Buyer that the trial court erred when it held that he did not state a CPL-catch-all cause of action, simply because he failed to plead "any false or deceptive statements." Trial Court Opinion, 3/7/23, at 4. Lack of pre-purchase false or deceptive statements does not, in and of itself, defeat a claim for relief under

the plain language of the CPL-catch-all provision. The trial court's interpretation would confine the statute to outlawing only a vendor's deceptive words that likely create confusion or misunderstanding, rather than a vendor's "deceptive conduct" that also likely creates confusion or misunderstanding. 73 P.S. § 201-2(4)(xxi). Given the plain language and the remedial nature of the statute, the trial court's narrow application of the CPL was erroneous.

However, under the right-for-any-reason doctrine, "an appellate court may uphold an order of a lower court for any valid reason appearing from the record." *In re A.J.R.-H.*, 188 A.3d 1157, 1176 (Pa. 2018) (quoting *Ario v. Ingram Micro, Inc.,* 965 A.2d 1194, 1200 (Pa. 2009)). This doctrine rests upon the rationale "that appellate review is of the judgment or order before the appellate court, rather than any particular reasoning or rationale employed by the lower tribunal." *Id.* (quotations omitted).

Buyer's CPL theory is based on deception by omission: namely, Ricoh's failure to disclose the latent defect in the Pentax Model K-50 camera to him and to the putative class. However, this Court has held that in order to maintain a failure-to-disclose theory under the CPL-catch-all provision, a consumer must plead and prove a duty to disclose by the vendor.

In *Romeo v. Pittsburgh Assocs.*, 787 A.2d 1027, 1033 (Pa. Super. 2001), a husband and wife attended a Pirates' baseball game. They sat a few rows behind third base. A line drive struck wife in the face and injured her. The Romeos sued the Pirates on many theories, including various common-law torts, breach of the contract, and for a violation of the CPL-catch-all

provision. The trial court sustained the Pirates' preliminary objections and dismissed the complaint. On appeal, this Court spent most of the opinion discussing the couple's common-law claims. We explained why the Pirates owed the Romeos no duty at common law.

Based on that determination, the panel proceeded to hold that, because the Pirates "had 'no-duty' to warn [the Romeos] about the risk of foul balls . . . nothing [the Pirates] did or did not do can be characterized as a 'deceptive business practice'" under Section 201-2(4)(xxi) of the CPL. ***Id.***, 787 A.2d at 1033. Thus, the ***Romeo*** Court established the principle that, under the catch-all provision, a CPL nondisclosure theory of deceptive conduct is only actionable if a vendor had an affirmative duty to disclose the defect in the good or service.[5]

---

[5] At best, this Court's CPL analysis in ***Romeo v. Pittsburgh Assocs.***, 787 A.2d 1027, 1033 (Pa. Super. 2001), is sparse. The panel did not review the statute's language, its legislative history, or similarly worded statutes from our Sister States or the Federal Government. ***See, e.g.***, ***Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.***, 647 N.E.2d 741, 745 (N.Y. 1995) (allowing plaintiff's nondisclosure theory to proceed to trial under New York's statutory equivalent of the CPL, "where the business alone possesses material information that is relevant to the consumer and fails to provide this information" without relying upon common-law duty to disclose); ***see also***, ***Kyszenia v. Ricoh USA, Inc.***, 583 F. Supp. 3d 350, 360 (E.D.N.Y. 2022) (holding that a complaint nearly identical to Buyer's amended complaint stated a claim against Ricoh for selling similarly defective Pentax cameras under the New York statute but dismissing action as time barred). Moreover, the ***Romeo*** court offered no explanation as to how a common-law duty to disclose (or lack thereof) could override the statutory mandates of the CPL. Presumably, the General Assembly adopted the remedial CPL to remove the old strictures of common-law pleading and proof from the law of consumer transactions. ***Romeo's*** holding may have undermined that legislative goal. *(Footnote Continued Next Page)*

No allegations in the amended complaint establish a common-law duty by Ricoh to disclose the defect in the Pentax camera to Buyer. Therefore, under **Romeo**, Buyer has clearly failed to state a claim that Ricoh violated the catch-all provision of the CPL by its silence regarding the defective camera. The trial court correctly held that he did not satisfy the third prong of a CPL action, as the test is articulated in **Gregg**, **supra**, albeit for an incorrect reason.

Buyer is entitled to no appellate relief. We dismiss his second appellate issue as moot.

Order affirmed.

_____

Still, "it is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this Court." **Commonwealth v. Pepe**, 897 A.2d 463, 465 (Pa. Super. 2006). We know of no such intervening pronouncement. Nor do we think, as Buyer contends in his brief and reply brief, that **Gregg v. Ameriprise Fin., Inc.**, 245 A.3d 637, 646 (Pa. 2021), did so. There, the question was what level of intent a vendor must have to violate the CPL-catch-all provision, not whether a common-law duty to disclose is a prerequisite to rendering a vendor's nondisclosure actionable. The High Court held that no proof of mental state is required; thus, the catch-all provision imposes strict liablity. Buyer seems to conflate strict liablity (*i.e.*, liablity without fault) with passive nondisclosure. An affirmative false statement and a deceptive nondisclosure may both be made intentionally (fraud), negligently (misrepresentation), or with the utmost care (strict liability). Thus, **Gregg**'s holding regarding strict liability under the catch-all provision did not overrule **Romeo** *sub silentio*.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/28/2023