**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, McCAFFERY, JJ.**

| | | |
|---|---|---|
| ROBERT N. HALPERN, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, | : | No. 7 EAP 2024 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Superior Court entered on July 28, |
| Appellant | : | 2023, at No. 226 EDA 2023, |
| | : | affirming the Order entered on |
| | : | January 12, 2023, in the Court of |
| v. | : | Common Pleas of Philadelphia |
| | : | County, Civil Division, at |
| | : | No. 220301922. |
| RICOH U.S.A., INC., | : | |
| | : | ARGUED: March 4, 2025 |
| Appellee | : | |

**OPINION**

**JUSTICE BROBSON**                                    **DECIDED: March 31, 2026**

Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL)[1] "enumerates twenty distinct unfair methods of competition and unfair or deceptive acts and practices that are unlawful" in Section 2(4)(i)-(xx), 73 P.S. § 201-2(4)(i)-(xx). *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021). The UTPCPL also contains a so-called "catch-all" provision, which prohibits vendors of goods and services from "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). In *Romeo v. Pittsburgh Associates*, 787 A.2d 1027 (Pa. Super. 2001), the Superior Court held that, to establish a claim of a deceptive omission against a vendor for violating the UTPCPL, a buyer must

---

[1] Act of Dec. 17, 1968, P.L. 1224, *as amended*, 73 P.S. §§ 201-1 to -10.

demonstrate that the vendor had an affirmative duty to disclose the subject of the omission.

In the instant matter, the Superior Court relied on *Romeo*'s holding in determining that a plaintiff/buyer did not state a cause of action under the catch-all provision of the UTPCPL, because the plaintiff/buyer failed to allege that the defendant/vendor had an obligation to disclose the subject of a purported deceptive omission regarding a camera. We granted allowance of appeal to consider whether the holding in *Romeo* is good law. After careful review, we answer that question in the affirmative. Consequently, we affirm the Superior Court's judgment.

## I. BACKGROUND

In March 2022, Appellant Robert Halpern (Halpern), an attorney acting *pro se*, filed a putative class action complaint in the Court of Common Pleas of Philadelphia County (trial court), naming Appellee Ricoh U.S.A., Inc. (Ricoh), as the defendant. Ricoh removed the litigation to the United States District Court for the Eastern District of Pennsylvania (District Court). For reasons that are irrelevant to this appeal, Halpern subsequently filed a motion to remand the matter back to the trial court, and the District Court granted the motion. On remand to the trial court, Ricoh filed preliminary objections to Halpern's complaint. Halpern then filed an amended complaint. In the amended complaint, Halpern made the following, relevant allegations.

Ricoh sells cameras under the Pentax brand name. In April 2015, Halpern purchased a Pentax Model K-50 (Camera), which replaced the Model K-30. The Camera operated well until February 2020, when its aperture-control mechanism, *i.e.*, the shutter lens, began to malfunction. This malfunction caused the Camera to produce images that appeared black or dark with normal exposure settings. At that point, Halpern had taken

fewer than 9,000 pictures with the Camera, though the Camera has an expected lifespan of 100,000 or more pictures.

After doing an internet search, Halpern learned that many other Pentax users reported similar issues with their cameras and that the Camera's malfunction was due to the solenoid sticking.[2] Pentax's solenoids began sticking frequently after Ricoh changed the solenoids in the Model K-30 and Model K-50 from white Teflon to green polyester. Ricoh has not published any public warnings about the malfunctioning aperture-control mechanisms, nor has the company provided Halpern with any information regarding this issue. Ricoh has extrapolated that 11,411 Model K-50s and Model K-30s have been impacted by failures of their aperture-control mechanisms.

In 2020, Halpern mailed several letters to Ricoh, complaining about the aperture-control issue. In an email dated October 6, 2020, Ricoh's technical solutions manager suggested to Halpern that he send the Camera to an authorized service center for a chargeable repair, as the Camera was no longer covered by its one-year warranty. A service center stated that the cost of the repair would be $260. Halpern, however, learned that he could bypass the aperture problem by using an older lens, which cost him $166.

Halpern's amended complaint alleged that Ricoh violated the UTPCPL by engaging in conduct that fell within the catch-all provision. Halpern averred that, in *Gregg*, this Court stated that the catch-all provision "may be characterized as a strict liability offense." (Amended Complaint, 8/15/2022, ¶ 79 (quoting *Gregg*, 245 A.3d at 650).)

---

[2] According to Halpern, "[a] solenoid is 'a coil of wire usually in cylindrical form that when carrying a current acts like a magnet so that a movable core is drawn into the coil when a current flows and that is used especially as a switch or control for a mechanical device (as a valve).'" (Halpern's Brief at 3 n.1 (quoting Merriam-Webster's Collegiate Dictionary (10th ed. 1993)).)

According to the amended complaint, "[t]his means that a vendor is liable for 'deceptive conduct during a consumer transaction that creates a likelihood of confusion or misunderstanding [and] upon which the consumer relies to his or her financial detriment'—without regard to the vendor's intent or state of mind." (*Id.* ¶ 80 (citing *Gregg*, 245 A.3d at 649-50).) Halpern further noted that "[t]he consumer must show that he or she justifiably relied upon the vender's deceptive conduct when making a purchasing decision." (*Id.* ¶ 82.)

The amended complaint alleged that, when Ricoh sold the Camera to Halpern, the Camera's aperture-control mechanism was defective. Halpern asserted that "Ricoh's failure to disclose this defect was a deceptive omission, as it tended to cause confusion or misunderstanding." (*Id.* ¶ 89.) Halpern further stated that "Ricoh is strictly liable for its failure to disclose the defect in the Camera, and in the cameras of those similarly situated." (*Id.* ¶ 91.) He claimed that, had he known that the Model K-50 had a defective aperture-control mechanism, he would not have purchased the Camera. Halpern averred that he suffered damages due to Ricoh's violation of the UTPCPL and that these damages can be measured by the cost of repairing or replacing the aperture-control mechanism.

Ricoh filed a preliminary objection in the nature of a demurrer to the amended complaint.[3] Ricoh suggested that Halpern's claim is based upon Ricoh's alleged failure to disclose a defect in the Model K-30 and Model K-50. Ricoh argued that a UTPCPL claim based on a pure omission "is actionable only if there is a duty to disclose." (Preliminary Objection, 9/6/2022, ¶ 41 (quoting *DeSimone v. U.S. Claims Servs., Inc.* (E.D. Pa., No. 19-6150, filed Mar. 11, 2020), slip op. at 3).) Ricoh averred that it "had no

---

[3] *See* Pa.R.Civ.P. 1028(a)(4) (providing that preliminary objections may be filed by any party to any pleading based on legal insufficiency of pleading).

duty to speak under the circumstances, and [Halpern] has alleged no basis to impute such a duty."  (*Id.* ¶ 47.)

Ricoh further submitted that Halpern's reliance on this Court's decision in *Gregg* was misplaced.  Ricoh stated that, while the Court in *Gregg* "held that intent to deceive is not an element of a UTPCPL claim based on affirmative representations," the Court "did not abrogate the well-established principle of Pennsylvania law that a pure omission cannot support liability unless there is a duty to disclose."  (*Id.* ¶ 53 (emphasis omitted).)  Ricoh took the position that, "[a]s a matter of law, a party's failure to disclose information that it is not dutybound to disclose cannot be deceptive under the UTPCPL."  (*Id.* ¶ 54.)  Ricoh added that Halpern's claim also failed because he did not allege that he was exposed to pre-purchase false statements made by Ricoh or that he justifiably relied on such false statements.

The trial court entered an order sustaining Ricoh's preliminary objection.  In its opinion in support of that decision, the trial court asserted that, "[f]irst, Halpern must prove Ricoh engaged in deceptive conduct."  (Trial Court Opinion, 3/7/2023, at 4.)  According to the court, Halpern failed in this regard because he did not "allege pre-purchase interactions, communications, advertisements or promises from Ricoh, let alone any false or deceptive statements."  (*Id.*)  "Second," the trial court opined, "Halpern must prove he justifiably relied on a misrepresentation."  (*Id.*)  The trial court concluded that Halpern did not "allege that he read, was aware of, considered, or relied upon any statement or representation from Ricoh regarding the [C]amera."  (*Id.*)  Halpern appealed to the Superior Court.

A three-judge panel of the Superior Court unanimously affirmed the trial court's order in a published opinion.  *Halpern v. Ricoh U.S.A., Inc.*, 299 A.3d 1023 (Pa.

Super. 2023). In so doing, the Superior Court explained that, to maintain a cause of action pursuant to the UTPCPL, a plaintiff must demonstrate:

> (1) [the plaintiff] purchased or leased goods or services primarily for a personal, family, or household purpose;
>
> (2) [the plaintiff] suffered an ascertainable loss of money or property;
>
> (3) the loss occurred as a result of the use or employment by a vendor of a method, act, or practice declared unlawful by the [UTPCPL]; and
>
> (4) the consumer justifiably relied upon the unfair or deceptive business practice when making the purchasing decision.

*Halpern*, 299 A.3d at 1027 (quoting *Gregg*, 245 A.3d at 646).

As to the third prong, the Superior Court agreed with Halpern "that the trial court erred when it held that he did not state a [UTPCPL]-catch-all cause of action, simply because he failed to plead 'any false or deceptive statements.'" *Id.* at 1028 (quoting Trial Court Opinion, 3/7/2023, at 4). The Superior Court reasoned:

> Lack of pre-purchase false or deceptive statements does not, in and of itself, defeat a claim for relief under the plain language of the [UTPCPL]-catch-all provision. The trial court's interpretation would confine the statute to outlawing only a vendor's deceptive words that likely create confusion or misunderstanding, rather than a vendor's "deceptive conduct" that also likely creates confusion or misunderstanding. 73 P.S. § 201-2(4)(xxi). Given the plain language and the remedial nature of the statute, the trial court's narrow application of the [UTPCPL] was erroneous.

*Id.* at 1028-29.

The Superior Court, nevertheless, determined that the trial court reached the correct result, relying on the right-for-any-reason doctrine.[4] In so doing, the Superior Court relied upon its decision in *Romeo*, which we pause to summarize. *Romeo* involved a husband and wife, Nancy Romeo (Nancy) and James Romeo (collectively, the Romeos). The Romeos purchased tickets to a Pittsburgh Pirates (Pirates) baseball

---

[4] "The 'right for any reason' doctrine allows an appellate court to affirm the trial court's decision on any basis that is supported by the record." *In re A.J.R.-H.*, 188 A.3d 1157, 1175-76 (Pa. 2018).

game. "The back of these tickets contained a disclaimer, which stated that ticket holders assumed the risk of certain dangers during the course of the game, including batted balls." *Romeo*, 787 A.2d at 1029. During the game, Nancy was injured when a line drive hit her in the face. The Romeos sued the Pirates, claiming, *inter alia*, that the Pirates violated the catch-all provision of the UTPCPL. *See* Romeos' Compl. ¶ 34 (Allegheny Cnty. Com. Pl. Ct., No. GD 00-22436, Feb. 9, 2001) (alleging that defendant's "conduct . . . represent[ed] violations of the [UTPCPL]"), available at 2001 WL 34758713. After the trial court sustained the Pirates' preliminary objections and dismissed the Romeos' complaint, the Romeos appealed to the Superior Court.

In affirming the trial court's order, the Superior Court in *Romeo* initially determined that the Pirates had no common law "duty to protect [the Romeos] from or to warn them about the risk of injury from a foul ball." *Id.* at 1031. Regarding the Romeos' UTPCPL claim, the Superior Court reiterated that the Pirates had no duty to warn the Romeos of the risk posed by foul balls and then stated that "nothing [the Pirates] did or did not do can be characterized as a 'deceptive business practice.'" *Id.* at 1033. The Superior Court explained that "[t]his situation is not one against which the law was designed to protect." *Id.*

Turning back to the Superior Court's opinion in the instant matter, the Superior Court observed that "the *Romeo* [c]ourt established the principle that, under the catch-all provision, a [UTPCPL] nondisclosure theory of deceptive conduct is only actionable if a vendor had an affirmative duty to disclose the defect in the good or service." *Halpern*, 299 A.3d at 1029 (footnote omitted). Because Halpern's amended complaint failed to allege that Ricoh had a common law duty to disclose the defect in the Camera, the Superior Court concluded that Halpern did not "state a claim that Ricoh violated the

catch-all provision of the [UTPCPL] by its silence regarding the defective camera." *Id.* at 1030.

Importantly, the Superior Court criticized *Romeo* in a footnote, characterizing the *Romeo* court's analysis as sparse at best. The Superior Court stated that the *Romeo* court did not review the language of the UTPCPL, "its legislative history, or similarly worded statutes from our Sister States or the Federal Government." *Id.* at 1029 n.5. The Superior Court further opined:

> [T]he *Romeo* court offered no explanation as to how a common-law duty to disclose (or lack thereof) could override the statutory mandates of the [UTPCPL]. Presumably, the General Assembly adopted the remedial [UTPCPL] to remove the old strictures of common-law pleading and proof from the law of consumer transactions. *Romeo*'s holding may have undermined that legislative goal.
>
> Still, "it is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening authority by our Supreme Court calls into question a previous decision of this [c]ourt." *Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006). We know of no such intervening pronouncement. Nor do we think, as [Halpern] contends in his brief and reply brief, that [*Gregg*] did so. There, the question was what level of intent a vendor must have to violate the [UTPCPL]-catch-all provision, not whether a common-law duty to disclose is a prerequisite to rendering a vendor's nondisclosure actionable. The High Court held that no proof of mental state is required; thus, the catch-all provision imposes strict liability. [Halpern] seems to conflate strict liability (*i.e.*, liability without fault) with passive nondisclosure. An affirmative false statement and a deceptive nondisclosure may both be made intentionally (fraud), negligently (misrepresentation), or with the utmost care (strict liability). Thus, *Gregg*'s holding regarding strict liability under the catch-all provision did not overrule *Romeo sub silentio*.

*Id.*

## II. ISSUE

This Court granted allowance of appeal to consider the following issue, as phrased by Halpern:

Whether, in this case of first impression, this Court should overrule the 2001 Superior Court holding in *Romeo v. Pittsburgh Associates* that a deceptive omission under Pennsylvania's Unfair Trade Practices and Consumer Protection Law is actionable only if a vendor had an affirmative duty to disclose a defect in a good or service.

*Halpern v. Ricoh U.S.A., Inc.*, 314 A.3d 513, 514 (Pa. 2024) (per curiam).

## III. DISCUSSION

### A. Scope and Standard of Review

This appeal is from an order sustaining a preliminary objection in the nature of a demurrer. Consequently, our standard of review is *de novo*, and our scope of review is plenary. *Raynor v. D'Annunzio*, 243 A.3d 41, 52 (Pa. 2020). A preliminary objection in the nature of a demurrer challenges the legal sufficiency of a pleading. Pa.R.Civ.P. 1028(a)(4). In evaluating such an objection, courts "must consider as true all of the well-pleaded material facts set forth in the complaint and all reasonable inferences that may be drawn from those facts." *Am. Hous. Tr., III v. Jones*, 696 A.2d 1181, 1183 (Pa. 1997). "In conducting our appellate review, we observe that preliminary objections, the end result of which would be dismissal of the action, may be properly sustained by the trial court only if the case is free and clear of doubt." *Id.* at 1184.

### B. Analysis

"Prior to the adoption of the [UTPCPL], individual consumers who had been victimized in the marketplace by unscrupulous vendors could vindicate their rights only under the common law theories of negligent and fraudulent misrepresentation." *Gregg*, 245 A.3d at 645. To establish a claim of fraudulent or intentional misrepresentation, a plaintiff must prove: (1) a representation; (2) material to the transaction at issue; (3) made falsely, with either knowledge or reckless disregard of its falsity; (4) with the intent to mislead another person; (5) justifiable reliance on the misrepresentation; and (6) an injury caused by that reliance. *Id.* at 645-46. To succeed on a claim of negligent

misrepresentation, a plaintiff must prove: "(1) a misrepresentation of a material fact; (2) made under circumstances in which the actor should have known of its falsity; (3) with an intent to induce another to act on it; (4) thereby causing injury to a party who justifiably relied upon the misrepresentation." *Id.* at 646.

As noted above, to succeed on a claim under the UTPCPL, a plaintiff must demonstrate, *inter alia*, that his or her ascertainable loss of money or property "occurred as a result of the use or employment by a vendor of a method, act, or practice declared unlawful by the [UTPCPL.]" *Gregg*, 245 A.3d at 646 (internal quotation marks omitted) (quoting 73 P.S. § 201-9.2(a)). "While Section [2(4) of the UTPCPL] enumerates twenty distinct unfair methods of competition and unfair or deceptive acts and practices that are unlawful, the legislature also included the catch-all provision in Section []2(4)(xxi)." *Id.* From 1968 to 1996, the catch-all provision prohibited vendors from engaging in "any other *fraudulent conduct* which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xvii) (1968) (amended 1996) (emphasis added).

In 1996, the General Assembly amended the catch-all provision to include a prohibition against vendors engaging in "deceptive conduct." Consequently, since 1996, the catch-all provision has proscribed "[e]ngaging in any other *fraudulent or deceptive conduct* which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi) (emphasis added). Despite the 1996 amendment, the Superior Court continued to interpret the catch-all provision as requiring proof of fraudulent conduct until its 2012 decision in *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 40 A.3d 145 (Pa. Super. 2012), wherein the Superior Court recognized, *inter alia*, that "maintaining a standard that demands fraud even after the amendment would render the legislature's addition of 'deceptive' redundant and meaningless in a manner inconsistent

with well-established principles of statutory interpretation."[5] *Bennett*, 40 A.3d at 154. Notably, the Superior Court decided *Romeo* in 2001—after the 1996 amendment but before *Bennett*.

Springing forward, the issue before this Court in our 2021 decision in *Gregg* was whether the catch-all provision of the UTPCPL requires a strict liability standard or, rather, proof of the vendor's intent. The Court in *Gregg* explained that "[t]he addition of 'deceptive' to describe the type of conduct barred by the catch-all provision of the [UTPCPL] expanded that provision beyond fraudulent conduct." *Gregg*, 245 A.3d at 647. This Court reasoned that "the plain language of the amended [catch-all] provision eliminates the state of mind element that was required prior to the amendment." *Id.* at 649.

This Court in *Gregg* further opined that the "plain language of the current statute imposes liability on commercial vendors who engage in conduct that has the potential to deceive and which creates a likelihood of confusion or misunderstanding." *Id.* In reaching this conclusion, the Court explained that the catch-all provision has a "lesser, more relaxed standard than that for fraudulent or negligent misrepresentation." *Id.* According to *Gregg*, "all that the statute requires the plaintiff to prove is that the acts or practices are capable of being interpreted in a misleading way." *Id.* (citation and internal quotation marks omitted).

We agree with the Superior Court insomuch as it determined that the issue in this litigation differs substantially from the issue presented in *Gregg* and that *Gregg*, therefore, did not overrule *Romeo sub silentio*. Unlike in *Gregg*, we are not called upon in this appeal to decipher whether the catch-all provision requires proof of a vendor's intent.

---

[5] This Court's decision in *Gregg* contains a more expansive explanation of the development of this law. *See Gregg*, 245 A.3d at 648-49.

That issue was put to rest in *Gregg*. Rather, the current appeal requires the Court to examine whether a plaintiff who claims that a vendor engaged in deceptive conduct in the form of an omission must allege and eventually prove that the vendor had an obligation to disclose the alleged defect that is at the heart of the omission. This issue presents a question of law. Consequently, we employ a *de novo* standard of review, and our scope of review is plenary. *Id.* at 644.

The answer to the issue before the Court largely requires that we interpret the UTPCPL. The task of interpreting a statute is guided by the Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501-1991 (Statutory Construction Act). The Statutory Construction Act provides that the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S. § 1921(a). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b).

We further note that,

> [w]hen interpreting a statute, courts should read the sections of a statute together and construe them to give effect to all of the statute's provisions. 1 Pa. C.S.[] § 1921(a). In giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear.

*Roethlein v. Portnoff L. Assocs., Ltd.*, 81 A.3d 816, 822 (Pa. 2013). "Additionally, '[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage,' though 'technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in [the Statutory Construction Act] shall be construed according to such peculiar and appropriate meaning or definition.'" *Ursinus Coll. v. Prevailing Wage Appeals Bd.*, 310 A.3d 154, 171 (Pa. 2024) (alterations in original) (quoting 1 Pa. C.S. § 1903(a)). Moreover, because the UTPCPL "is a remedial statute, we must construe it liberally." *Gregg*, 245 A.3d at 647.

Applying these interpretive standards, we further agree with the Superior Court's conclusion that the plain language of the catch-all provision dictates that a vendor's omission can constitute "deceptive conduct." In this regard, we note that, in *Gregg*, this Court determined that the General Assembly intended "deceptive conduct" to take on the meaning that the United States Supreme Court assigned to that phrase in *Federal Trade Commission v. Algoma Lumber Company*, 291 U.S. 67 (1934). *Gregg*, 245 A.3d at 648. In the context of consumer protection law, the High Court in *Algoma Lumber Company* defined "deceptive conduct" as "conduct that has the 'capacity to deceive.'" *Id.* (quoting *Algoma Lumber Co.*, 291 U.S. at 81).

For purposes of the issue currently before us, we further highlight that "[t]he word 'conduct' . . . covers both acts and omissions." *Conduct*, Black's Law Dictionary (12th ed. 2024) (second alteration in original) (quoting J.W. Cecil Turner, *Kenny's Outlines of Criminal Law* 13 n.2, 24 (16th ed. 1952)); *see id*. (defining "conduct" as, *inter alia*, "[p]ersonal behavior, whether by action or *inaction*, verbal or *nonverbal*" (emphasis added)). Consequently, conduct that has the capacity to deceive can encompass omissions. The question, therefore, becomes when does an omission have the capacity to deceive.

Halpern argues that "[t]here is no suggestion in the text of the [UTPCPL] that a plaintiff must allege that the defendant has a duty to disclose certain facts." (Halpern's Brief at 7.) He further maintains that the holding in *Romeo* is outdated because "it likely has a fraud lineage, as it falls within the time period between 1996 and 2012 when the Superior Court was disregarding the catch[-]all amendment." (*Id.* at 9 (internal quotation marks omitted).) In addition, Halpern asserts that the UTPCPL is modeled after the

Federal Trade Commission Act (FTCA), 15 U.S.C. §§ 41-58, and that "the FTCA does not require a duty to disclose for deceptive omissions."[6] (*Id.* at 10.)

As we explained in *Gregg*, to establish a cause of action under the catch-all provision, "all that the statute requires the plaintiff to prove is that the acts or practices are capable of being interpreted in a misleading way." *Gregg*, 245 A.3d at 649 (citation and internal quotation marks omitted). Logic dictates that the only way a buyer could interpret a vendor's silence in a misleading way is if: (1) the vendor had a duty to disclose information to the buyer; and (2) the vendor's silence was, in essence, a representation that he had no information that needed to be disclosed. In other words, a vendor's silence, absent a duty to speak, is meaningless and incapable of deception. *See Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 128 (Cal. Ct. App. 2006) (interpreting California's unfair competition law (UCL) and stating, "[w]e cannot agree that a failure to disclose a fact one has no affirmative duty to disclose is 'likely to deceive' anyone within the meaning of the UCL"), *superseded by statute as recognized in Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1159 n.1 (N.D. Cal. 2011). We essentially recognized this principle in our decision in *Milliken v. Jacono*, 103 A.3d 806 (Pa. 2014), where we stated that, "if there was no legal obligation to reveal [an] alleged defect, there can be no liability for [an] appellant's claims," which included a claim that the seller of a home violated the catch-all provision of the UTPCPL by failing to disclose that a murder/suicide had occurred in the home. *Milliken*, 103 A.3d at 809.

---

[6] The Pennsylvania Association for Justice filed an *amicus* brief in support of Halpern. The following entities filed *amicus* briefs in support of Ricoh: Pennsylvania Coalition for Civil Justice Reform, Pennsylvania Manufacturers Association, and American Property Casualty Insurance Association; Product Liability Council, Inc.; Chamber of Commerce of the United States, and Pennsylvania Chamber of Business and Industry; and Product Liability Advisory Council, Inc.

This interpretation of the catch-all provision comports with the context in which it appears, *i.e.*, within the UTPCPL's definition of "unfair methods of competition" and "unfair or deceptive acts or practices." As noted above, immediately preceding the catch-all provision are "twenty distinct unfair methods of competition and unfair or deceptive acts and practices that are unlawful" for purposes of the UTPCPL. *Gregg*, 245 A.3d at 646; *see* 73 P.S. § 201-2(4)(i)-(xx).[7] In this regard, we agree with Ricoh insomuch as it points

---

[7] Section 2(4)(i)-(xx) of the UTPCPL provides, in relevant part:

> (4) **"Unfair methods of competition"** and **"unfair or deceptive acts or practices"** mean any one or more of the following:
>
>> (i) Passing off goods or services as those of another;
>>
>> (ii) Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;
>>
>> (iii) Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;
>>
>> (iv) Using deceptive representations or designations of geographic origin in connection with goods or services;
>>
>> (v) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;
>>
>> (vi) Representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used or secondhand;
>>
>> (vii) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another;
>>
>> (viii) Disparaging the goods, services or business of another by false or misleading representation of fact;
>>
>> (ix) Advertising goods or services with intent not to sell them as advertised;

(continued…)

(x) Advertising goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(xi) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(xii) Promising or offering prior to time of sale to pay, credit or allow to any buyer, any compensation or reward for the procurement of a contract for purchase of goods or services with another or others, or for the referral of the name or names of another or others for the purpose of attempting to procure or procuring such a contract of purchase with such other person or persons when such payment, credit, compensation or reward is contingent upon the occurrence of an event subsequent to the time of the signing of a contract to purchase;

(xiii) Promoting or engaging in any plan by which goods or services are sold to a person for a consideration and upon the further consideration that the purchaser secure or attempt to secure one or more persons likewise to join the said plan . . . ;

(xiv) Failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made;

(xv) Knowingly misrepresenting that services, replacements or repairs are needed if they are not needed;

(xvi) Making repairs, improvements or replacements on tangible, real or personal property, of a nature or quality inferior to or below the standard of that agreed to in writing;

(xvii) Making solicitations for sales of goods or services over the telephone without first clearly, affirmatively and expressly stating[, *inter alia*,] the identity of the seller;

. . . .

(xviii) Using a contract, form or any other document related to a consumer transaction which contains a confessed judgment clause that waives the consumer's right to assert a legal defense to an action;

(xix) Soliciting any order for the sale of goods to be ordered by the buyer through the mails or by telephone unless, at the time

(continued…)

out that "[n]one of the [twenty] categories preceding the catch-all provision involve silence unaccompanied by some affirmative statement or unaccompanied by direct interaction with consumers[; r]ather, whether expressly or in context, each involves either an affirmative misrepresentation or partial statement rendered misleading by an omission." (Ricoh's Brief at 32 (footnote omitted).) Consequently, our interpretation of the catch-all provision fits the overall scheme of the UTPCPL's definition of "unfair methods of competition" and "unfair or deceptive acts or practices."

Moreover, as Ricoh emphasizes, Halpern's position turns warranty law on its head. (Ricoh's Brief at 50-57.) For example, it is undisputed that the Camera was covered by a one-year express warranty and that the Camera functioned appropriately while under that warranty. As the Superior Court has explained, "express warranties are bargained, 'dickered,' individualized promises that the goods will perform up to the specific standards set forth in that warranty." *Goodman v. PPG Indus., Inc.*, 849 A.2d 1239, 1245 (Pa. Super. 2004) (citing 13 Pa. C.S. § 2313, Official Comment, ¶ 1), *aff'd*, 885 A.2d 982 (Pa. 2005) (per curiam). "Pennsylvania's breach of warranty law supplies a suitable framework for regulating and enforcing the expectations and obligations of the parties as to product performance. It provides a disappointed purchaser a complete remedy for loss of the product itself and of its use within the limits of the parties' contractual understandings." *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 133 (Pa. Super. 1989)

---

of the solicitation, the seller has a reasonable basis to expect that it will be able to ship any ordered merchandise to the buyer [under specific circumstances;]

. . . .

(xx) Failing to inform the purchaser of a new motor vehicle offered for sale at retail by a motor vehicle dealer of [rustproofing information.]

73 P.S. § 201-2(4)(i)-(xx).

(en banc).  Of further note, in Pennsylvania, the implied warranty of merchantability requires goods to "have an inherent soundness which makes them suitable for the purpose for which they are designed." *Phillips v. Cricket Lighters*, 883 A.2d 439, 444 (Pa. 2005) (citation omitted).  A cause of action for a breach of an implied warranty of merchantability must be commenced within four years after the cause of action has accrued.  *See* 13 Pa. C.S. § 2725(a) (providing four-year statute of limitations for "breach of any contract for sale"); 13 Pa. C.S. § 2314(a) (explaining that "a warranty that the goods shall be merchantable is implied *in a contract for their sale* if the seller is a merchant with respect to goods of that kind" (emphasis added)).

Despite failing to identify a duty that required Ricoh to disclose the purported defect in the Camera, Halpern, in effect, advocates that:  (1) Ricoh is required to extend the protections of the Camera's one-year warranty to cover the cost of repairing the Camera's malfunctioning aperture-control mechanism; or (2) the four-year statute of limitations for breach of an implied warranty of merchantability does not apply to his claim that the Camera is not suitable for its designed purpose.  (*Compare* Amended Complaint, 8/15/2022, ¶ 27 n.5 (claiming that Model-K50s have "an expected lifespan of 100,000 or more actuations") *with id*. ¶ 27 (averring that Camera failed after "fewer than 9,000 actuations" (internal quotation marks omitted)).)  Yet, according to Halpern's amended complaint, the Camera performed appropriately for approximately five years after Halpern purchased it.  In other words, the Camera "functioned well[] and produced excellent images" for years after its express warranty terminated and for a period after the expiration of the implied warranty of merchantability.  (*Id.* ¶ 8.)  Because the UTPCPL in no way provides an "end around" of warranty law, we refuse to adopt Halpern's position, especially in light of the fact that the UTPCPL has a specific provision that defines "unfair methods of competition" and "unfair or deceptive acts or practices" as "[f]ailing to comply

with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services is made." 73 P.S. § 201-2(4)(xiv).

For similar reasons, we are unpersuaded by Halpern's contention that the FTCA somehow requires a different result. (Halpern's Brief at 9-12.) This Court has explained that "the [UTPCPL] is based upon the [FTCA] and the Lanham Act," 15 U.S.C. §§ 1051-1127. *Gregg*, 245 A.3d at 647 (citing *Commonwealth by Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 818 (Pa. 1974) (*Monumental Props.*)). In the context of interpreting the UTPCPL, this Court has stated that "we *may* look to the decisions under those [a]cts for guidance and interpretation." *Monumental Props.*, 329 A.2d at 818 (emphasis added) (citation and internal quotation marks omitted).

Halpern shares that "there are two situations in which the Federal Trade Commission [(FTC)] finds omissions to be actionable." (Halpern's Brief at 10.)

> First, it can be deceptive to tell only half the truth, and to omit the rest . . . . Second, it can be deceptive for a seller to simply remain silent, if he does so under circumstances that constitute an implied but false representation, such as where a misleading impression arise[s] from the physical appearance of the product, or from the circumstances of a specific transaction, or . . . based on ordinary consumer expectations as to the irreducible minimum performance standards of a particular class of good. (quoting from *In re International Harvester Co.*, 104 F.T.C. 949 (1984) [(*International Harvester*)]).

(*Id.* (some alterations in original) (internal quotation marks omitted) (quoting *Tomasella v. Nestlé USA, Inc.*, 364 F. Supp. 3d 26, 34 (D. Mass. 2019)).)

Halpern further notes that,

[i]n 2017, the Acting Commissioner of the FTC elaborated on the second situation, stating:

> [O]ffering a product for sale implies that the product is "reasonably fit for [its] intended uses," and that it is "free of gross safety hazards." If the product does not meet ordinary consumer expectations of minimum performance, or if the product is not *reasonably fit for its intended uses*, the seller must disclose that.

(*Id.* at 11 (some alterations and emphasis in original) (quoting Statement of Acting Chairman Maureen K. Ohlhausen *In the Matter of Lenovo, Inc.*, September 5, 2017).) Halpern then acknowledges that "[m]any omissions might be annoying or unexpected, but if the product does not fall below an 'irreducible minimum,' disclosure is not required." (*Id.*)

As Ricoh points out, "it is undisputed that Ricoh did not make any half statement that would render any omission misleading." (Ricoh's Brief at 43.) We also agree with Ricoh that "it cannot be said that [Halpern's] camera failed an 'irreducible minimum performance standard' when it performed perfectly beyond the period for asserting any implied (or express) warranty claims." (*Id.* (footnote omitted); *see id.* ("It would be fundamentally inconsistent with the [FTC's] analysis in *International Harvester* for there to be an implied obligation to speak to performance beyond the applicable warranty period.").) Moreover, we do not dispute that sellers must disclose if a product does not meet ordinary consumer expectations of minimum performance or is not reasonably fit for its intended uses. We, however, note that, if a seller fails in this regard, the cause of action would be breach of an express warranty or breach of the implied warranty of merchantability.

In closing, we address the concerns expressed by the dissent. As best we understand, the dissent would interpret the catch-all provision of the UTPCPL as providing a buyer with an omission-based cause of action that survives a vendor's preliminary objection in the nature of a demurrer simply if the buyer avers in a civil complaint that: (1) the product at issue was defective insomuch as the buyer believes that the product "is not what it purports to be and will not meet the ordinary consumer's bare minimum performance expectation for the class of product;" and (2) the vendor did not disclose the alleged defect. (Dissenting Op. at 8.) The dissent suggests that such an

averment amounts to an allegation that the seller "engage[d] in silent 'deceptive conduct[.]'" (*Id.* at 9.)  According to the dissent, "when the General Assembly amended the catch-all [provision] in 1996 to prohibit deceptive conduct in addition to fraudulent conduct, it necessarily imposed upon sellers a duty to speak whenever failure to do so would be 'deceptive.'" (*Id.* at 6.)  The dissent, therefore, appears to opine that, in amending the catch-all provision to include "deceptive conduct," the General Assembly intended to provide a buyer with a successful, omission-based cause of action against a vendor if the buyer merely alleges and eventually proves that the vendor put a defective product into commerce and failed to inform the public of this action.

We are of the view that the General Assembly did not intend "deceptive conduct" to encompass the expansive principle that, if a vendor merely sells a defective product, the vendor was "deceptive" as a matter of law under the UTPCPL's catch-all provision. Indeed, selling a defective product does not, in and of itself, evince that a vendor engaged in conduct that has the capacity to deceive.  To hold otherwise would give rise to the possibility that all product defect cases also may be pursued under the UTPCPL and subject to its various remedies, such as treble damages and the award of attorneys' fees. 73 P.S. § 201-9.2.  On the other hand, requiring a buyer that is pursuing an omission-based claim under the catch-all provision to allege and eventually prove that a vendor had an obligation to disclose something about the product at issue is consistent with the language of the catch-all provision and avoids unreasonably expanding the statute beyond its boundaries.

Of further note, unlike the dissent, we do not believe that a vendor silently creates a deceptive impression that a product meets the ordinary consumer's bare minimum expectations for the product merely by placing an allegedly defective product into commerce.  Rather, the implied warranty of merchantability ensures buyers that a product

is inherently sound, making it suitable for the purpose for which it was designed. Moreover, if a vendor expressly warranties a product for a period of time, the vendor is directly communicating to a buyer the vendor's promise that the product will work as intended for the specified time period, placing the ordinary consumer on notice of what his or her minimum expectations for the product should be. Through these warranties, vendors affirmatively inform buyers that their products may fail after these warranties extinguish.

Lastly, we address the dissent's interest in flashlights that are not flashlights and automobiles that are lawnmowers in disguise and its concern that our construction of the statute in this case would foreclose suits under the catch-all provision of the UTPCPL where "a seller fails to disclose that the product he is selling is not what it purports to be on its face." (*Id.* at 8-9, 10, 14.) If a seller misleads, by commission or omission, a consumer into believing that a product is something that it is not, our analysis does not foreclose a potential claim against the seller for that alleged deception. That is not what Halpern alleges in this case. He did not purchase a digital camera that was not, in fact, a digital camera. To the contrary, he purchased an actual digital camera that operated well even years after the express warranty period expired. If Halpern had purchased what he thought was a digital camera but that turned out to be a pencil sharpener, he might have a claim under the catch-all provision of the UTPCPL if the seller engaged in any deceptive conduct that contributed to his false belief. But that is not *this* case.

### IV. CONCLUSION

In *Romeo*, the Superior Court concluded that a plaintiff must establish that a vendor had a duty to disclose the subject of an omission-based claim when he or she brings such a claim pursuant to the UTPCPL. Although the Superior Court's UTPCPL analysis in *Romeo* was undoubtedly sparse, we nevertheless hold that *Romeo* reached

the correct result. Here, Halpern failed to allege that Ricoh had an obligation to disclose the alleged defect in the Camera's aperture-control mechanism. He, therefore, failed to state a claim that Ricoh violated the UTPCPL's catch-all provision.[8] Because the Superior Court's judgment reflects the correct result, we affirm that judgment, which affirmed the trial court's order sustaining Ricoh's preliminary objection in the nature of a demurrer.

Chief Justice Todd and Justices Dougherty and McCaffery join the opinion.

Justice Wecht files a dissenting opinion in which Justices Donohue and Mundy join.

---

[8] Given that Halpern did not cite any obligation on the part of Ricoh to disclose the alleged defect in the Camera, we will not further elaborate on the nature or scope of the duty that a plaintiff must allege for purposes of maintaining a cause of action under the catch-all provision.